STATE of Alaska, Appellant,

v.

ZIA, INC., an Alaska Corporation,
Appellee.

No. 2518.

Supreme Court of Alaska.

Nov. 22, 1976.

Avrum M. Gross, Atty. Gen., and Frederick H. Boness, Asst. Atty. Gen., Juneau, for appellant.

Kenneth D. Jensen, Jensen, Harris & Roth, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

ERWIN, Justice.

In this appeal we are asked to determine whether a party, in seeking damages against the State of Alaska for breach of contract, can proceed in the superior court without first seeking relief from the appropriate administrative or executive officer.[1]

The record reflects that on August 6, 1974, the Department of Administration of the State of Alaska distributed an Invitation to Bid for the installation of safety canopies on certain state equipment. In response thereto, ZIA, Inc. (hereafter referred to as ZIA), submitted a bid. The final award was made to ZIA on September 10, 1974, and received by ZIA on September 24, 1974.

According to the contract, work on the equipment was to commence "immediately" and "terminate January 15, 1975," the majority of the equipment being "physically

---

1. Also presented for review are two additional issues, i. e., did the State waive its peremptory challenge of the trial judge, and did ZIA fail to allege facts sufficient to support a lawful termination of the contract between itself and the State. In that we find the administrative issue dispositive of this case, these issues will not be reached.

located in the Anchorage area." However, a final notice regarding the location of the equipment, received by ZIA on October 5, 1974, revealed that the equipment was scattered from Kodiak to Nome, with only 12 of the 50 pieces of equipment located in the Anchorage area.

On November 14, 1974, after unsuccessful, informal negotiations with the State to extend the length of the contract and to change other terms of performance, ZIA filed a complaint against the State in the Superior Court, Third Judicial District. The complaint alleged that the State

> breached its contractual obligations to [ZIA] by unreasonably delaying notice of Contract Award; by failing to identify, segregate and make units available for commencement of work; and by materially misrepresenting the location and availability of the units for fabrication at [ZIA's] plant/shop.

ZIA sought judgment against the State for (1) actual damages incurred through its mobilization for performance of the contract, (2) consequential damages resulting from its declination of other contract and purchase order work in anticipation of performing the contract with the State, (3) loss of profits anticipated from the performance of the contract, and (4) a declaration discharging it from further performance under the contract.

On December 18, 1974, the State filed a motion to dismiss on the ground that ZIA had failed to comply with the jurisdictional requirements of AS 09.50.250[2] or, alternatively, had failed to exhaust its administrative remedies as prescribed by AS 09.50.-250 since the claim was one which could have been presented under AS 44.77.010–44.77.060.[3] Judge Lewis denied the State's motion in an order issued February 7, 1975.

On February 11, 1975, the State attempted to peremptorily challenge Judge Lewis pursuant to Civil Rule 42(c). On March 13, 1975, Judge Lewis ruled that the attempted challenge was ineffective because the State had waived its peremptory challenge under Civil Rule 42(c)(4)(i)[4] when

2. AS 09.50.250 provides in pertinent part: A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court. A person who may present his claim under AS 44.77.010–44.77.060 may not bring an action under this section except as set out in AS 44.77.-040(c).

In *Huffaker v. Decker*, 77 Cal.App.2d 383, 175 P.2d 254, 256 (1946), the notion of conditional waiver of immunity along the line of the Alaska statute is recognized, and there the court states:

> It is recognized in the cases that when the state waives its immunity from liability it may attach conditions to the exercise of rights granted against it . . .

Likewise, a more recent California case on this subject observes:

> . . . where the right to bring suit against the state is granted, the state may impose conditions as a pre-requisite to the commencement of the action against it and place limitations upon the enforcement of such action. (Citations omitted) *Stanley v. City & County of San Francisco*, 48 Cal.App.3d 575, 579, 121 Cal.Rptr. 842, 844 (1975).

3. AS 44.77.010 provides:
(a) Every claim for reimbursement for money expended, or for compensation for labor, materials, or supplies furnished, or services given to or for the state, whether based on a contract or on a ratification, shall be promptly presented to the appropriate administrative or executive officer for approval and payment.
AS 44.77.020–44.77.060 deal with the administrative review procedure when the claims submitted to the appropriate officer is denied in whole or in part.

4. Alaska Civil Rule 42(c)(4)(i) reads:
(c) *Change of Judge as a Matter of Right.* In all courts of the State where a master calendar system has been adopted, a judge or master may be peremptorily challenged as follows:

(4) *Waiver.* A party waives his right to change a particular judge as a matter of right when he knowingly participates before that judge in:
(i) Any judicial proceeding which concerns the merits of the action and involves the consideration of evidence or of affidavits; or . . .

it had knowingly participated in a proceeding in which he had "ruled on the merits of the action." The State sought review of Judge Lewis' ruling in this court; and on May 13, 1975, we denied the petition.

While the Petition for Review and a duplicitous notice of appeal were being prepared by the State, ZIA filed an application for entry of default pursuant to Civil Rule 55(a). The State never filed an answer to ZIA's complaint even though ZIA's counsel agreed to an extension of the original deadline from December 24, 1974, to April 7, 1975. An entry of default was ordered on May 1, 1975, and a default hearing was held three weeks later. After the hearing a default judgment for $38,234.47 plus interest and costs was entered against the State of Alaska by Judge Lewis. This appeal by the State followed.

In this appeal the State contends that they exercised a valid peremptory challenge against Judge Lewis and he therefore had no authority to enter a default judgment, that ZIA failed to state a cause of action for termination of the parties' contract, and further that the superior court did not have jurisdiction over ZIA's claim for damages. We shall proceed with the jurisdictional contention first, for its disposition precludes our consideration of the other issues presented.

We begin by noting historically the doctrine of sovereign immunity, which was grounded in the ancient maxim that the king can do no wrong, operated as a bar to claims brought against the state.[5] As the doctrine developed in the United States, states began to permit suits against themselves as long as they were brought in a manner and in the courts prescribed by law.

The State of Alaska provides for suits against the State in Article II, § 21, of its Constitution:

> *Suits against the State.* The legislature shall establish procedures for suits against the State.

Under AS 09.50.250, which was promulgated by the legislature pursuant to Article II, § 21, the right to sue the State was made conditional upon compliance with certain provisions dealing with administrative remedies, i. e. AS 44.77.010–44.77.060.

In some states, administrative preconditions to suit against the State are not jurisdictional,[6] but are deemed to be conditions precedent[7] to recovery against the State.[8] As originally enacted,[9] AS 09.50.250 provided in part:

> Any person having a claim against the state may bring an action against the state in the superior court.

5. For an excellent discussion of the historic roots of ,the sovereign immunity doctrine, see *Muskopf v. Corning Hospital District*, 55 Cal.2d 211, 11 Cal.Rptr. 89, 90–91 359 P.2d 457, 458–459 (1961).

6. *See Chas. L. Harney. Inc. v. State*, 217 Cal.App.2d 77, 31 Cal.Rptr. 524 (1963); *Spence v. State*, 198 Cal.App.2d 332, 18 Cal. Rptr. 302 (1962).

7. *See O'Donoghue v. State*, 66 Wash.2d 787, 405 P.2d 258 (1965); *Ghiozzi v. City of South San Francisco*, 72 Cal.App.2d 472, 164 P.2d 902 (1946); *Eppstein v. City of Berkeley*, 52 Cal.App.2d 395, 126 P.2d 365 (1942).

8. An examination of the claims statutes in four western states (Oregon, Washington,

California, and Arizona) indicates a division as to the appropriate method for presenting claims against the state. The State of Washington permits the aggrieved party to file his or her claim directly with the courts, while Oregon, California and Arizona require administrative determination before the matter may be filed in court. RCW 4.92.010; ORS 30.275; California Government Code §§ 945.4, 905.2; A.R.S. § 12–821. Under the Federal Tort Claims Act, claims against the federal government must be initially presented to the appropriate federal agency under 28 U.S.C. 2675(a). *Meeker v. U. S.*, 435 F.2d 1219 (8th Cir. 1970).

9. Article XXVI, Ch. 101, SLA 1962.

In 1965 the Alaska legislature amended the provision[10] by attaching the requirement that:

A person who may present his claim under AS 44.77.010–44.77.060 may not bring an action under this section except as set forth in AS 44.77.040(c).

Since AS 44.77.040(c)[11] is only applicable after the claimant has pursued an administrative remedy—a course not taken by ZIA—the question presented is whether ZIA should have brought its claim under AS 44.77.010–44.77.060.

Under AS 44.77.010–44.77.060, every claim for reimbursement for money expended, or for compensation for labor, materials, or supplies furnished, or services given to or for the state, whether based on a contract or on a ratification, must first be presented to the appropriate administrative or executive officer for approval and payment, and if denied, appealed administratively, before an action on the claim can be brought in superior court.

■ ZIA contends that it was not required to follow the administrative procedure because its claim was not of the genre contemplated by the legislature when it enacted AS 44.77.010–44.77.060. Specifically, ZIA argues that (1) its claim was not "based on a contract," but rather arose out of a breach of contract, and for purposes of the statute, there is a distinction between

claims *based* on a contract and claims arising out of a *breach of* contract, and (2) its claim was not for anything "given to or for the state."

The State argues that ZIA's claim was clearly one which should have been presented administratively initially, and therefore the trial court erred in denying the State's motion to dismiss on that ground.

We find that the pleadings are determinative of the issues raised herein. In ZIA's complaint, it maintained that its damages arose *as a result of the contract.* In paragraph 13, ZIA alleged:

Subsequent to award,[12] but prior to the date plaintiff received notice or acquired knowledge of the misrepresentations and breach of defendant, plaintiff expended sums to purchase specialized materials suitable to performance of the contract; incurred and paid freight charges for delivery thereof; accomplished design requirements as required for performance of the contract; and incurred travel, administrative and payroll expense mobilizing for performance all in an amount exceeding $10,000, the exact sum to be established at the time of trial.

Thus, by its own admission, the claims were in fact *based on a contract* as set forth in AS 44.77.010.[13]

---

10. § 1, Ch. 30, SLA 1965. The 1965 amendment also clarified what was meant by "claim" by substituting "contract, quasi-contract or tort claim" for "claim."

11. AS 44.77.040(c) provides:
If the claimant does not accept the decision of the Department of Administration [which reviews the claim on appeal if the administrative or executive officer disallows all or part of the recovery sought by the claimant], he may bring an action under AS 09.50.250–09.50.300 if he brings it within 30 days after he receives notice of the decision of the department. A claimant may also bring an action under AS 09.50.250–09.50.300 at any time after one year has elapsed since the presentation of his claim under § 10 of this chapter, if no decision has been made by the department.

12. In 1B J. McBride and I. Wachel, *Government Contracts,* Procurement by Formal Advertising, § 10.10[5] at 10–33 (1973), an "award" is defined as the acceptance of the offer ("bid"). Acceptance (award) of a responsive bid creates a contract to furnish the offered supplies or services. (§ 10.10 at 10–12) The point to remember is that the bid is the offer (by the contractor) and a contract comes into being upon its acceptance by the government. (§ 10.10 at 10–13)

13. The legislative history of AS 44.77.010 is helpful in interpreting the meaning of "based on a contract." It reveals that an act allowing claims against the sovereign body dates back to 1939 when Alaska was a territory. At that time (under § 1, ch. 61, SLA 1939, and subsequently enacted into ACLA 1949, Title 15–1–1) all claims "based on a con-

■ With regard to the second issue, ZIA submits that the complaint filed in this action demonstrates that ZIA does not claim that it is entitled to reimbursement or compensation for anything which is actually furnished to the State. Thus, ZIA contends, its claim was not one for anything "given" to or for the State under AS 44.77.010. In interpreting this statute it is our opinion that the word "given" serves only to modify the word "services." It is apparent that if "given" modified "money," "labor," "materials," and "supplies," each term would have a double modifier and the statute would be subject to construction not contemplated by the legislature. Based on this interpretation, it is unnecessary for the appellant to demonstrate that the damages alleged by ZIA were for something "given" to or for the State.

■ In its complaint, ZIA sought recovery for money expended for labor, materials, administrative expenses, design and lost profits. It is evident that it sought "reimbursement for money expended . . . for the state . . ." as contemplated by AS 44.77.010. Hence, neither of the justifications asserted by ZIA for failing to proceed under the administrative procedure set forth in AS 44.77.-010–44.77.060 are persuasive.

■ ZIA also contends that it would have been futile to pursue its remedy through administrative channels, and therefore it was unnecessary to do so. Because the factors on which ZIA relies in asserting this futility arose after its action was filed in superior court, we find its argument on this issue to be without merit.

ZIA alternatively argues that the court should not insist on the requirement of primary jurisdiction in this case because there is no factual determination which could be made administratively, since the issue is one of law.[14] Thus, it submits, the parties' dispute could be more adequately resolved by a court of law.

■ As we noted in *Greater Anchorage Area Borough v. City of Anchorage*:[15]

> Under the so-called "doctrine of primary jurisdiction," a court may, in appropriate cases, stay or dismiss pending litigation so as to enable a proper agency to initially pass upon an aspect of the case calling for administrative expertise. (Footnote omitted)

■ Likewise, we observed in *G. & A. Contractors, Inc. v. Alaska Greenhouses, Inc.*:[16]

> We are instructed by Professor Davis that the doctrine of primary jurisdiction deals with the question of whether a court or an administrative agency should make the initial decision on a given issue. 3 K. Davis, Administrative Law

tractual relation" and "for reimbursement for money expended," etc. were to be first remedied administratively. When the act was repealed and reenacted in 1951 (§ 43, ch. 133, SLA 1951), it was done without amendment. Again "every claim for reimbursement for money expended," etc., were to be first tractual relation" had to first be administratively remedied. In 1953, chapter 24 of SLA 1953 repealed the ACLA dealing with claims against the Territory and reenacted it as it appeared in ACLA 1949. That Act read as follows:

> *Presentation to appropriate administrative or executive officer: Review by Board of Administration.* Every claim for reimbursement for money expended, or for compensation for labor, materials or supplies furnished, or for personal services rendered to or on behalf of the Territory, whether based on a contractual relation or a ratification, shall be promptly presented to the

appropriate administrative or executive officer for approval and payment.

It is enigmatic how "based on contractual relation" changed to "based on a contract" (as it appears in AS 44.77.010). If nothing else, the cursory way in which the transformation was made reveals that no difference between the two concepts was intended. It is clear that from the time the award to ZIA was made to the time the state allegedly breached its contract, ZIA and the State were engaged in a contractual relationship and all expenses incurred could be claimed under AS 44.77.010.

14. F. Cooper, State Administrative Law 569 (1965).

15. 504 P.2d 1027, 1032–1033 (Alaska 1972).

16. 517 P.2d 1379, 1382–1383 (Alaska 1974).

Treatise § 19.01 at 2 (1958). Its purpose is to help a court decide whether it should refrain from exercising its jurisdiction until after the agency has determined some question or an aspect of some question arising in the proceedings before the court. (Footnote omitted)

By virtue of AS 09.50.250 we recognize the legislative policy which dictates that actions against the State first should be considered by the affected administrative agency. While we do not find AS 09.50.-250 to be of the jurisdictional nature, but rather in accord with the *G. & A. Contractors* case wherein we discussed primary jurisdiction as a doctrine founded on a policy whereby a court refrains from exercising its existing jurisdiction. Therefore we find, with respect to cases which fall within AS 09.50.250, that that statute establishes an administrative procedure which can be characterized as a condition precedent.[17]

■ Had the trial court granted the State's motion to dismiss the action brought by ZIA, ZIA would have been able to present its claim to the appropriate administrative officer within the time limit set by AS 44.77.010(a), which merely provides that claims must be "promptly presented."[18] It is our opinion that ZIA should not be prejudiced by relying on the decision of the trial court, and therefore it should not be barred from submitting a claim because of the lapse of time since the controversy arose.

The judgment of the superior court is vacated, and this case is remanded with instructions to grant the motion to dismiss filed by the State of Alaska.

17. *See Spence v. State,* 198 Cal.App.2d 332, 333, 18 Cal.Rptr. 302, 304 (1962).

18. The word "promptly" is the only time limitation placed on ZIA's presentation of its claim against the state. For the purposes of the filing of contract claims, as is the case here, "promptly" is not defined in calendar terms. For the purposes of filing claims against the state for medical services under AS 47.07 or 47.25.120–47.25.300, AS 44.77.010(b) commands:

. . . promptly in [AS 44.77.010(a)] means within six months after the date the service was provided or third party payment was received. No such claim may be paid which is not filed within that period . . . .

To apply the "six month" limitation to contract claims might be faulty. Clearly, the legislature chose to define "promptly" only for medical claims. If it had intended to do so for other claims (including contract claims) and had a period of time in mind, it can be assumed that a reasonable legislature would have so legislated. In the absence of those intentions, no definite time limit should delimit "promptly" as applied to contract claims under AS 44.77.010(a).