STATE of Alaska; Hugh Malone, in his capacity as State Senator and Chairman of the Legislative Council of the State of Alaska; Legislative Council of the State of Alaska; Legislative Affairs Agency of the State of Alaska; and Myrton Charney, Executive Director of the Legislative Affairs Agency of the State of Alaska, Appellants/Cross-Appellees,

v.

Robert DUPERE, President and Owner of Dupere & Associates, Inc., Appellee/Cross-Appellant.

Nos. S–620, S–640.

Supreme Court of Alaska.

Nov. 22, 1985.

Rehearing Granted Feb. 10, 1986.

Virginia B. Ragle, Asst. Atty. Gen., and Norman C. Gorsuch, Atty. Gen., Juneau, for appellants/cross-appellees.

Loren Domke, Juneau, for appellee/cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Appellee Robert Dupere sued appellants, the State of Alaska, the Legislative Council and its chair, Hugh Malone, and the Legislative Affairs Agency and its director, Myrton Charney, ("the State") for payment for services Dupere performed during the 1980 legislative session. The jury awarded Dupere $72,160. In this appeal the State asks us to vacate the judgment and remand the case with instructions to grant the State's motion to dismiss, upon the ground that Dupere did not pursue administrative review, pursuant to AS 44.77, before bringing suit in superior court.

## I. FACTS

In January 1980, Dupere and former Senator George Hohman, then chair of the Legislative Council, entered into a verbal contract whereby Dupere was to provide the services of his associate, Carl Gonder, for various tasks in the senator's office. Dupere was also to provide consultation on the permanent fund legislation and other matters of interest to Senator Hohman. In exchange for these services Dupere was to receive $80 per hour.[1] While the parties agreed that a written contract would be signed later, none was executed during the 1980 legislative session.

In June 1980, Dupere submitted a bill totalling approximately $72,000 for over 900 hours of service, plus per diem and reimbursement for an airline ticket. He was not paid. A written contract was executed on January 10, 1981, two days before Senator Hohman was removed as chair of the Legislative Council. The contract was drafted by the Legislative Affairs Agency and signed by Dupere, Senator Hohman, Myrton Charney and Billy Berrier, Agency Legal Counsel. The purpose of the contract was to provide "the special committee on economic development studies with pro-

fessional services relating to said studies." Senator Hohman was designated as the project director.[2] The parties disagree as to the similarity of the terms of the written contract and the oral agreement. However, even if the tasks were identical under both agreements, the compensation differed.

Although the contract at issue was signed prior to Senator Hohman's termination, Myrton Charney notified Dupere on February 17 that the Legislative Council repudiated the written contract. Shortly thereafter, Dupere requested payment from Hugh Malone, the Legislative Council's new chair. The Council again refused to authorize any compensation.

Nearly a year later, Dupere sought reconsideration of his claim. A two-member investigatory committee was appointed to consider the matter. Their report noted no formal approval for the formation of any special committee on economic development studies by the Legislature, the Senate or the Legislative Council. The report also stated that on June 2, 1980, the Legislative Council unanimously agreed "that all contracts executed for any project not handled by a Committee be approved by the Council." The report concluded that Dupere performed services directly for Hohman, not for any legislative committee; that Hohman had no authority to sign the contract without council approval; and that Dupere was not legally entitled to any compensation. The Legislative Council, after considering the committee's recommendation, determined that the contract would not be paid.

Four months later, on July 7, 1982, Dupere filed suit in superior court, seeking compensation under alternative actions in contract, estoppel and quasi-contract. The State filed a motion to dismiss due to Dupere's alleged failure to pursue the administrative review procedures required by AS

---

1. Dupere had previously worked under both oral and written contracts with the Alaska legislature during 1977–80, and under oral contracts with Senator Hohman in 1978 and 1979.

2. The special committee on economic development studies is not listed as receiving funds in the Legislative Council's budget for the 1980 session.

44.77, before suit may be brought against the State under AS 09.50.250–.300.

The superior court found that AS 44.77 is not a procedural prerequisite to contract claims against the legislative branch, and thus denied the State's motion to dismiss. The court gave the following as primary reasons for its decision:

(1) Title 44 encompasses strictly executive matters and there is no reason to believe AS 44.77 should also apply to the legislative branch, absent express inclusion.

(2) The actions of the legislative council in utilizing its own ad hoc mechanism of the two-member investigatory committee indicates that the legislature did not believe that AS 44.77 applied to it.

(3) The application of AS 44.77 to legislative branch contracts "could raise problems with the doctrine of separation of powers.... Serious constitutional questions could arise if the legislature refused to comply with an executive agency order to it to appropriate funds in such circumstances."

## II. APPLICABILITY OF AS 44.77

The question of whether the claims procedure mandated by AS 44.77 applies to contract claims against the legislative branch is one of first impression for this court. The resolution of this issue involves general statutory interpretation. As such, this court possesses the special competency to independently interpret the breadth of AS 44.77. *See Wien Air Alaska v. Department of Revenue*, 647 P.2d 1087, 1090 (Alaska 1982); *Weaver Brothers, Inc. v. Alaska Transportation Commission*, 588 P.2d 819, 821 (Alaska 1978).

The Alaska Constitution, article II, section 21, requires the legislature to "establish procedures for suits against the State." The legislature implemented this mandate through the adoption of AS 09.50.250–09.50.300, covering "Claims Against State." AS 09.50.250 provides in pertinent part:

A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court. *A person who may present his claim under AS 44.77 may not bring an action under this section except as set out in AS 44.77.040(c).*

(emphasis added).

Title 44 of the Alaska Statutes covers "State Government," with Chapter 77 controlling "Claims Against the State." Specifically, AS 44.77.010(a) provides:

Every claim for reimbursement for money expended, or for compensation for labor, materials, or supplies furnished, or services given to or for the state, whether based on a contract or on a ratification, shall be promptly presented to the appropriate administrative or executive officer for approval and payment.

If the administrative or executive officer disallows any part of the claim, the claimant may obtain review of the decision by the Department of Administration ("Department"), *if application is made within sixty days*. AS 44.77.020. The Department then makes a decision which the claimant can appeal at a hearing. AS 44.-77.030–44.77.040. At that point, if the claimant does not accept the Department's final decision, AS 44.77.040(c) provides:

the claimant may bring an action under AS 09.50.250–09.50.300 if it is brought within 30 days after the claimant receives notice of the decision of the department. A claimant may also bring an action under AS 09.50.250–09.50.300 at any time after one year has elapsed since the presentation of the claim under AS 44.77.010, if no decision has been made by the department.

It is undisputed that Dupere did not follow the administrative appeal procedure of AS 44.77.040(c). The issue is whether AS 44.77 applies to actions for breach of contract against the Alaska Legislature, making that procedure mandatory in the case at bar.

The State contends that the right to sue the State found in AS 09.50.250 is conditional upon compliance with AS 44.77, because the State's waiver of immunity is

effective only to the extent that a claimant follows the required procedures. *State v. ZIA, Inc.,* 556 P.2d 1257, 1259 n. 2, 1263 (Alaska 1976). The State argues that under AS 44.77.020.030 Dupere was required to bring his claim before the Department within sixty days after the Legislative Council originally denied payment.

Dupere does not take issue with the State's construction of AS 09.50.250 and 44.77 *per se;* rather, he argues that the claims procedure set out by the latter statute applies only to *executive branch* departments and agencies. Dupere distinguishes *ZIA* on the grounds that it involved an executive branch agency.

■ For the reasons expressed below, we interpret AS 44.77 as mandating a procedure for specific types of claims against all three branches of state government.[3] While much of Title 44 concerns executive branch matters, it does not encompass "strictly executive matters" as the superior court indicated. On the contrary, Title 44 contains chapters which pertain to State government in general, *e.g.,* Chapters 3–12 concerning sovereignty, site, symbols and holidays, and Chapters 68–99 covering state property, claims and liability, independent state boards, associations, commissions and corporations.

The title of AS 44.77, "Claims Against the State," indicates that it refers to claims against the state in general, not only those against the executive branch. The reference in AS 44.77.010(a) to "administrative" *or* "executive" officers also indicates that the procedure is not limited to claims against the executive branch. The subcategory of claims presented under AS 44.77 appears to be defined on the basis of the *type of claim* rather than by the *branch of government* against which the claim is brought. In *State v. Haley,* 687 P.2d 305

(Alaska 1984), Haley, a legislative research assistant, brought a wrongful discharge claim against defendants nearly identical to those in the case at bar. Haley was not required to submit her claim for administrative review under AS 44.77.010–.060. The reason her claim did not fall under AS 44.77 was because it was not a claim for "services given to or for the State." *Id.* at 318 n. 9. The reason was *not* because her claim was against the legislative branch instead of the executive branch.

Claims against the legislative branch are not excluded in the wording of AS 44.77. The only express exception to AS 44.77 provides that "44.77.010–.060 [does] not apply to any department in the executive branch which has adopted a mandatory claims and appeal procedure." AS 44.77.-070. The fact that AS 44.77.070 singles out for exemption certain executive branch departments implies that the claims procedure applies to the balance of the executive branch and other governmental branches.[4]

■ We disagree with the superior court's suggestion that the application of AS 44.77 to legislative branch contracts "could raise problems with the doctrine of separation of powers." The separation of powers doctrine must be considered along with the complementary doctrine of checks and balances. *See Bradner v. Hammond,* 553 P.2d 1, 5 (Alaska 1976). No separation of powers problem is raised by the application of the claims procedure outlined in AS 44.77 and AS 09.50.250–.300 to the legislative branch. On the contrary, these statutes circumscribe the authority of the Department of Administration to ensure that the department's procedural role does not interfere with the legislative function. The Department of Administration may issue a warrant against the proper legislative ap-

---

**3.** The fact that the Legislative Council appointed an ad hoc two-member investigatory committee is not decisive on the interpretation of AS 44.77. AS 44.77.010(a) and AS 44.77.020(b) contemplate an initial investigation of claims against the state by the governmental unit most closely connected with the claim, so the Legislative Council's actions fit into the AS 44.77 scheme.

**4.** While AS 24.23, enacted in 1982, provides for professional services contracting procedures for the legislative branch, there is no separate statutory review process in AS 24.23 for adjudication of grievances against the legislature. The review procedures of AS 44.77 are not inconsistent with the contract procedures of AS 24.23.

propriation for the sum the department finds due the claimant *if* a sufficient appropriation exists for payment, or the department may *recommend* to the legislature that it appropriate a sum to cover the payment. AS 44.77.040(b); AS 09.50.270. The Department of Administration, like the judiciary, cannot intrude upon the legislature's power to appropriate funds. Thus, there is no separation of powers problem in making review of a claim against the legislature by the executive Department of Administration a prerequisite to judicial review.

## III. FAILURE TO EXHAUST ADMINISTRATIVE REMEDY

■ We turn next to the argument that Dupere's claim is barred by failure to exhaust his administrative remedy. In *State v. ZIA, Inc.,* 556 P.2d 1257 (Alaska 1976), we recognized the legislative policy embodied in AS 09.50.250 that actions against the state should first be considered by the affected administrative agency. We noted, however, that the procedures in AS 09.50.-250 are not jurisdictional. 556 P.2d at 1263. Thus, in a proper case a court may exercise its discretion and provide judicial relief without requiring the claimant to exhaust his administrative remedies. *See State, Department of Labor v. University of Alaska,* 664 P.2d 575, 581 (Alaska 1983) (doctrine of exhaustion not applicable to proceeding on wage claim filed with Department of Labor when claimant challenged the agency's jurisdiction); *Id.* at 582 n. 1 (Rabinowitz, J., dissenting) (one of the key factors affecting applicability of the exhaustion doctrine is the extent of injury from pursuit of administrative remedy); *Univar Corp. v. City of Phoenix,* 594 P.2d 86, 90 (Ariz.1979) (exhaustion of remedies rule should not be summarily applied in cases in which the agency's jurisdiction is being contested, the agency's expertise is unnecessary, or irreparable harm will be caused if the rule is followed).

■ In the case at bar, the superior court ruled, incorrectly, that AS 44.77 was not applicable. We, nevertheless, affirm

the court's judgment. Although AS 44.77 applies to Dupere's claim, we think this is an appropriate case in which to waive the exhaustion requirement. AS 44.77 has not previously been construed to apply to nonexecutive branch claims; hence we do not believe that Dupere should be penalized for acting on a reasonable interpretation of the statute. Dupere's one-year delay in filing this suit was not unreasonable given his assumption that the six-year statute of limitations for contract actions was applicable to his case. This is not a case where the claimant ignored the administrative process entirely. To the contrary, Dupere requested payment from the Legislative Council and subsequently sought reconsideration when that claim was denied. An investigation ensued. We believe that it was reasonable for Dupere to assume he had satisfied the appropriate internal legislative procedures.

While we could still require an administrative appeal, neither the policy behind the exhaustion of administrative remedies requirement nor the interests of justice would be served. *See State, Department of Labor,* 664 P.2d at 581. In *Zia,* 556 P.2d at 1263, we recognized that the procedures of AS 09.50.250 embody a policy that actions against the state should be considered first by the affected agency. In Dupere's case, the Legislative Council appointed a committee to investigate his claim, and made a decision based on that committee's findings. At this point, there is no pressing policy reason for forcing Dupere to comply with the formal requirements of AS 44.77. Additionally, there has been a jury trial. It would be inefficient to annul the results of the trial and send Dupere back to the administrative level, since he would still have the right to a *de novo* trial under AS 09.50.250 if he disagreed with the administrative decision and brought suit within thirty days of the decision. AS 44.77.-040(c).

■ Therefore, we hold that the procedures of AS 44.77 apply to specific claims against the three branches of government. Dupere will not be required to exhaust his

administrative remedies nor have his case dismissed for failure to do so. The jury verdict in the case stands.[5]

---

5. The State has objected to the jury instructions given on apparent authority, ratification, equitable estoppel, and quasi-contract, on the grounds that they misstate the law; that they confuse the jury, and/or that sufficient evidence was not presented to support the theories. We will not review these objections to the jury instructions because the State did not properly apprise the trial court of the matter objected to and the grounds of the objection. Civil Rule 51(a). *See Ollice v. Alyeska Pipeline Service Co.,* 659 P.2d 1182, 1185 (Alaska 1983); *Alyeska Pipeline Service Co. v. Aurora Air Service,* 604 P.2d 1090, 1094 (Alaska 1979). Just prior to instructing the jury, the trial court gave the parties the opportunity to object to the specific instructions to be given. The State made minor objections, but did not raise the issues now on appeal. The State's objections submitted with its proposed jury instructions only alerted the court to the State's general position on the issues. The fact that the trial court was aware of the State's position on the issue does not excuse the State's failure to object to the instructions when afforded the opportunity to do so. *Ollice,* 659 P.2d at 1185. *See also Hout v. Nana Commercial Catering,* 638 P.2d 186, 189 (Alaska 1981); *Brown v.*

*Estate of Jonz,* 591 P.2d 532, 533–35 (Alaska 1979). "The purpose of this rule [Civil Rule 51(a) ] is to enable the trial judge to avoid error by affording him an opportunity to correct his charge before it goes to the jury. The dictates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must be specific enough to clearly bring into focus the precise nature of the asserted error." *Saxton v. Harris,* 395 P.2d 71, 73 (Alaska 1964). *See also Hout,* 638 P.2d at 189 n. 9. The State has failed to satisfy the dictates of Civil Rule 51(a).

Although the State did not properly object to the instructions, we could still consider its objections if the instructions given constituted plain error. *Brown,* 591 P.2d at 535; *City of Nome v. Ailak,* 570 P.2d 162, 171 (Alaska 1977); *Merril v. Faltin,* 430 P.2d 913, 917 (Alaska 1967). We do not believe that the instructions given by the trial court were "plainly erroneous," therefore, we do not review the court's instructions on these issues because they did not result in a "miscarriage of justice." *Brown,* 591 P.2d at 535, *City of Nome,* 570 P.2d at 171; *Merril,* 430 P.2d at 917.