STATE of Alaska, ALASKA COURT
SYSTEM ADMINISTRATIVE
OFFICE OF the COURTS, Appellant,

v.

LAW OFFICES OF COLEMAN AND IA-
COPELLI, a Professional Partnership,
Consisting of Terri-Lynn Coleman and
Salvatore Iacopelli, Appellees.

No. S–589.

Supreme Court of Alaska.

March 14, 1986.

Paul R. Lyle, Asst. Atty. Gen., Fairbanks, Norman C. Gorsuch, Atty. Gen., Juneau, for appellant.

Salvatore Iacopelli and Terri-Lynn Coleman, Law Offices of Coleman and Iacopelli, Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

Appellees, Terri-Lynn Coleman and Salvatore Iacopelli, were appointed under Administrative Rules 12 and 13 by the presiding judge of the superior court, fourth judicial district, to serve as attorneys or guardians ad litem in four cases.[1] They agreed to the appointments. Upon completion of the cases, appellees submitted billings to the Administrative Office of the Alaska Court System for fees and costs. Each billing was in excess of the fee limits set forth in the Administrative Rules,[2] but was approved by the area court administrator and the trial judge assigned to the particular case. The record does not show whether the billings were also approved by the presiding judge of the fourth judicial district as required by former Administrative Rule 13. The Administrative Office made partial payments substantially in excess of the maximum set forth in the Administrative Rules.[3] Following receipt of the par-

1. The four cases are: *Matter of S.R.T.*, case no. 4FA–81–143 CP; *State v. Hancock*, case no. 4FA–82–1921 CR; *Matter of Buchanan*, case no. 4FA–83–39 CP; and *Bartholomew v. Bartholomew*, case no. 4FA–80–1356 CIV.

2. The billings were subject to the fee limits set forth in former Administrative Rules 12 and 13, adopted pursuant to Supreme Court Orders No. 412, effective July 1, 1980, and No. 530, effective September 1, 1982. Administrative Rule 12 was repealed and re-enacted by Supreme Court Order No. 652, effective July 1, 1985. Administrative Rule 13 was repealed by Supreme Court Order No. 653, effective June 6, 1985.

The *Hancock* case was controlled by former Administrative Rule 12. Administrative Rule 12(f)(4) set a maximum fee of $2,500 for felony cases disposed of following trial. The administrative director could authorize higher payments under subsection (h):

(h) *If necessary to prevent manifest injustice,* the administrative director may authorize payment of compensation or expenses in excess of the amounts allowed under this rule.
Former Alaska R.Admin.P. 12(h) (emphasis added).

The remaining billings were submitted under former Administrative Rule 13 which set a maximum fee of $1,500. Higher fees were available in certain circumstances:

(a) Attorneys appointed by the court to represent persons under the Rules of Children's Procedure, pursuant to statute, or where the appointment of counsel is constitutionally required, shall be compensated at the rate of $40.00 per hour. The maximum compensation for any one case shall not exceed $1,500.00 unless excess compensation is approved by the presiding judge of the judicial district and authorized by the administrative director.

(b) Guardians ad litem appointed by the court under the Rules of Children's Procedure or pursuant to statute, shall be compensated as follows:
. . . .
(3) The maximum compensation for any one case shall not exceed $1,500.00 unless compensation is approved by the presiding judge of the judicial district and authorized by the administrative director.
. . . .
(e) The assigned judge may award compensation at a higher rate than provided in this rule in *unusually complex or protracted cases.* The rates of compensation may be modified by the administrative director as necessary to meet budgetary needs.
Former Alaska R.Admin.P. 13 (emphasis added).

3. The partial payments made and the alleged remaining balance are as follows:

tial payments, appellees attempted to contact the Administrative Office by telephone and letter in order to discover why the remainder of the bills had not been paid. Appellees assert, and the Administrative Office does not deny, that the Administrative Office did not provide them with written notification that payment in full would not be made. The only reason for non-payment given by the Administrative Office was that "manifest injustice" did not result from the denial of full payment.

Coleman and Iacopelli filed a complaint in superior court, alleging breach of contract and a violation of federal and state due process. The Administrative Office moved for summary judgment. The motion was denied; instead, the court granted summary judgment in favor of appellees for the amounts they requested. The Administrative Office has appealed.

In its motion for summary judgment, and on appeal, the Administrative Office argues that it is immune from this action under the doctrine of sovereign immunity. It reasons that the claim does not sound in contract, quasi-contract, or tort and therefore the state's immunity from suit has not been waived under AS 09.50.250.[4]

This action resembles a contract action as it is for services requested and performed. According to Black's Law Dictionary the term quasi "is used in legal phraseology to indicate that one subject resembles another, with which it is compared, in certain characteristics, but that there are intrinsic and material differences between them." Black's Law Dictionary 1410 (4th ed. 1968). It defines *quasi contractus* as follows:

An obligation similar in character to that of a contract, which arises not from an agreement of parties but from some relation between them, or from a voluntary act of one of them. An obligation springing from voluntary and lawful acts of parties in the absence of any agreement.

*Id.* at 1410 (citation omitted).

The term "quasi-contract" often refers to claims for unjust enrichment.[5] This is not such a claim. However, we do not believe that this is dispositive. Any claim for "services given to or for the state, whether based on a contract or on a ratification" may be filed administratively. AS 44.77.010(a).[6] Construing "ratification" to refer to the acceptance of services, we find that this claim fits squarely within the scope of the statute. Any claim that may be brought under AS 44.77.010(a) is subject to judicial review under AS 09.50.250. AS 44.77.040(c).[7] We believe that it is best to construe the term "quasi-contract" in AS 09.50.250 in a non-technical way so that it is consistent with the "contract or ratification" language used in AS 44.77.010(a).

Every claim for reimbursement for money expended, or for compensation for labor, materials, or supplies furnished, or services given to or for the state, whether based on a contract or on a ratification, shall be promptly presented to the appropriate administrative or executive officer for approval and payment.

| Case Name | Paid | Amount Owing |
|---|---|---|
| State v. Hancock | $4,000 | $ 941.30 |
| Matter of S.R.T. | 4,904 | 3,091.60 |
| Matter of Buchanan | 3,300 | 3,232.00 |
| Bartholomew v. Bartholomew | 2,676 | 2,184.15 |

4. AS 09.50.250 provides in relevant part:
   A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in the superior court. A person who may present the claim under AS 44.77 may not bring an action under this section except as set out in AS 44.77.040(c).

5. S. Williston, 1 Williston on Contracts § 3A, at 15 (1957) (quasi-contractual obligations are generally based on unjust enrichment or benefit, but this is not universally true); A. Corbin, 1 Corbin on Contracts § 19, at 50 (1963).

6. AS 44.77.010(a) provides:

7. AS 44.77.040(c) provides:
   If the claimant does not accept the decision of the Department of Administration, the claimant may bring an action under AS 09.-50.250–09.50.300 if it is brought within 30 days after the claimant receives notice of the decision of the department. A claimant may also bring an action under AS 09.50.250–09.-50.300 at any time after one year has elapsed since the presentation of the claim under AS 44.77.010, if no decision has been made by the department.

**4**

In this way the legislative intent that any claim which may be brought under AS 44.-77.010(a) is reviewable under AS 09.50.250 will be satisfied.

■ The Administrative Office next argues that even if this action sounds in quasi-contract, the superior court should not have heard the merits because appellees have not exhausted available administrative remedies. We agree. The second sentence of AS 09.50.250 provides: "A person who may present the claim under AS 44.77 may not bring an action under this section except as set out in AS 44.77.-040(c)." Under AS 44.77.010(a), every claim for compensation for labor or services for the state must be promptly presented to the appropriate administrative officer. If the officer disallows all or part of the claim, the claimant may apply for review by the Department of Administration within sixty days. AS 44.77.020(a). If the Department disallows the application, the claimant may file an appeal with the Department. AS 44.77.030. If, after the appellate hearing, the Department denies the claim in whole or in part, the claimant may bring an action against the state under AS 09.50.250 within thirty days. AS 44.77.-040(c). The claimant may also bring an action under AS 09.50.250 after one year has elapsed since presentation of the claim under AS 44.77.010, if no decision has been made by the Department. *Id.*

In *State v. Dupere,* 709 P.2d 493 (Alaska 1985), we held that these procedures apply to legislative as well as executive branch disputes. We stated in *Dupere* that "we interpret AS 44.77 as mandating a procedure for specific types of claims against all three branches of state government." 709 P.2d at 496. We adhere to that statement in this case.

■ Appellees should be given a reasonable time in which to initiate the adminis-trative review process contemplated by AS 44.77.020. This, rather than dismissal on the grounds that the appellees did not exhaust their administrative remedies, is appropriate because the appellees have acted promptly in their efforts to obtain compensation. *See Van Hyning v. University of Alaska,* 621 P.2d 1354, 1356 (Alaska 1981) (court may in its discretion remand case to agency for exhaustion of remedies if suit is promptly filed without first seeking administrative relief). Moreover, in view of the silence of the Administrative Office with respect to the appellees' claims, it is impossible to identify when the sixty day period for application to the Department of Administration under AS 44.77.020(a) began to run.

■ We require administrative review instead of affirming the summary judgment in favor of Coleman and Iacopelli because summary judgment was inappropriate in this case. *Compare Dupere,* 709 P.2d at 497 (judgment upheld despite claimant's failure to exhaust administrative remedies in part because there had been proper jury trial). Civil Rule 56(c) authorizes the rendition of summary judgment against the moving party "when appropriate." Such action may be taken only when it is apparent that there are no genuine issues of material fact and the non-moving party is entitled to judgment as a matter of law. These circumstances did not exist in the present case.

■ Compensation here is governed by the court system's administrative rules. Fees in excess of the specified limits are subject to approval by the administrative director under former Administrative Rules 12 and 13. Under these rules, the director's review of excess fee requests was guided by varying standards, but under each provision he was given broad discretion in approving fees.[8] The record indi-

---

**8.** Under former Administrative Rule 12(h), the administrative director "may authorize" higher fees in criminal cases "if necessary to prevent manifest injustice." In unusually complex or protracted civil cases, the administrative director "may ... modif[y]" the assigned judge's award of higher fees "as necessary to meet budgetary needs." Former Alaska R.Admin.P. 13(e). In other civil cases, fees in excess of the stated limits which were approved by the presiding judge of the judicial district were simply subject to "authoriz[ation]" by the administra-

cates that the director evaluated excess fee requests considering the circumstances of each case which might justify excess compensation, such as the complexity and duration of each case, as well as the court system's budgetary constraints. We find these to be proper factors for the director's consideration.

The factual underpinnings of an abuse of discretion case are not clearly present. Factual issues exist as to whether a greater payment was needed in the *Hancock* case to prevent "manifest injustice," whether the other cases were of an unusually complex or protracted nature, and whether further payment could be made without jeopardy to other budgetary needs.[9]

REVERSED.

---

tive director; no standard was specified in Rule 13 to guide the director's review.

9. Appellees recognized in their memorandum opposing the motion for summary judgment that the affidavits concerning whether there was money available to pay them were in conflict thus raising "a question of fact to be determined ultimately by the fact finder." [R. 31–32]