**ALASKA INTERNATIONAL CON-STRUCTORS and Employers Casualty Company, Appellants,**

v.

**Oscar KINTER, Jr. and Alaska Workers' Compensation Board, Appellees.**

**No. S–2073.**

Supreme Court of Alaska.

May 20, 1988.

James F. Klasen and Gary W. Gantz, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellants.

James R. Slaybaugh, Pletcher & Slaybaugh, Anchorage, for appellee Kinter.

No appearance for the Board.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

Alaska International Constructors appeals from a superior court judgment affirming the Alaska Workers' Compensation Board's (Board) ruling that its employee, Oscar Kinter, is permanently totally disabled. The issues presented are (1) whether Kinter's total disability is permanent or temporary, and (2) whether the Board was

correct in awarding statutory attorney's fees to Kinter.

## FACTS

On February 9, 1983, Oscar Kinter, a welder working for Alaska International, injured his back while on the job.[1] As a result of this injury, Kinter underwent back surgery and has been unable to work since.

After the accident, Kinter was classified as temporarily totally disabled, and he began receiving workers' compensation benefits of $638.91 per week from Alaska International.[2] On August 31, 1984, Kinter filed an Application for Adjustment of Claim with the Board and requested a hearing in order to change his status to permanent total disability.

In depositions prior to the Board hearing, Kinter's doctor stated that Kinter is 50% disabled. The doctor also stated that "he is not going to be able to work in this welder capacity any more," and "he would obviously live a sedentary life." Another doctor, who is an expert in rehabilitative medicine, stated in his deposition that Kinter's lumbar disc disease will be permanent.

After the hearing, the Board found that Kinter "is extremely limited in his ability to read and write, has little experience in non-physical labor, and cannot sit or stand for prolonged periods." It further found that he could not "perform even non-demanding work." The Board ruled that Kinter is permanently totally disabled, and Alaska International appealed. On February 11, 1987, the superior court affirmed the

Board, and Alaska International appeals the court's judgment.

## KINTER'S DISABILITY

We must first determine the meaning of the word "permanent" as that term is used in AS 23.30.180. This is a legal question for which we use the substitution of judgment standard of review. *See Peck v. Alaska Aeronautical,* 756 P.2d 282, 284, 285, (Alaska, 1988); *State v. Dupere,* 709 P.2d 493, 495 (Alaska 1985). Then, we must determine whether there is substantial evidence[3] to support the Board's factual determination that Kinter's disability is permanent. *See Whaley v. Alaska Workers' Compensation Board,* 648 P.2d 955, 959 (Alaska 1982); *Burgess Construction v. Smallwood,* 623 P.2d 312, 317 (Alaska 1981).

The first question concerns the interpretation of the word "permanent" as used in the workers' compensation statutes.[4] Generally, "[u]nless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage." *Division of Elections v. Johnstone,* 669 P.2d 537, 539 (Alaska 1983) (quoting *State v. Debenham Electric Supply,* 612 P.2d 1001, 1002 (Alaska 1980)), *cert. denied,* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984). *See also* AS 01.10.-040 (words used in statutes are to be construed according to their common and approved usage).

■ The meaning of "permanent" has been neither statutorily nor judicially de-

---

1. This was Kinter's fourth back injury; his first occurred in 1975, with repeated injuries in 1976 and 1978. He had also had two back surgeries prior to this incident. Alaska International requested Second Injury Fund reimbursement, the denial of which was affirmed in *Alaska International Constructors v. State, Second Injury Fund,* 755 P.2d 1090 (Alaska 1988).

2. Alaska International had been making these payments since the injury occurred.

3. "Substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a given conclusion." *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 593 n. 8 (Alaska 1979).

4. AS 23.30.180, as applicable at the time of Kinter's injury, provided:

   In case of total disability adjudged to be permanent 66⅔ percent of the injured employee's average weekly wages shall be paid to the employee during the continuance of the total disability. Loss of both hands, or both arms, or both feet, or both legs, or both eyes, or of any two of them, in the absence of conclusive proof to the contrary, constitutes permanent total disability. In all other cases permanent total disability is determined in accordance with the facts.

fined in Alaska.[5] As Professor Larson wrote, "[o]ccasionally, the term 'permanent' has to be construed, although usually permanence is fairly obvious, as in the case of loss of limbs, or other incurable conditions. Permanent means lasting the rest of claimant's life." 2 A. Larson, *The Law of Workmen's Compensation* § 57.13, at 10–42 (1986). In addition,

> [a] condition that, according to available medical opinion, will not improve during the claimant's lifetime is deemed a permanent one. If its duration is merely uncertain, it cannot be found to be permanent.

*Id.* at 10–42 to 10–43. We believe that this definition is logical and comports with common usage, and, thus, we adopt it here.

■ The second question presented in this case is whether there was substantial evidence for the Board's finding that Kinter's total disability is indeed permanent. Alaska International argues that, since the Board found that "[a]fter the passage of an uncertain period of time, ... it is hoped by the medical witnesses that Mr. Kinter will be able to return to some sort of limited work," his condition *must* be temporary. That is, the medical experts agreed that Kinter might someday be able to do some work, and according to Alaska International, this precludes a finding that he is permanently disabled.

We are not persuaded by Alaska International's argument; we believe that there was substantial evidence to support the Board's finding of permanence. The medi-

cal experts agreed that Kinter's condition "is going to be of a permanent nature." Dr. Voke said that he will never be a welder again, and that "he would obviously lead a sedentary life." These statements provide substantial support for a finding that Kinter's condition is "incurable" and will "last[ ] the rest of [Kinter's] life." 2 A. Larson, *supra*, at 10–42.

The fact that the medical experts offered some cautious comments that Kinter might someday be able to work in a non-demanding job does not preclude the Board's finding.[6] In order for a claimant to be permanently totally disabled, he need not establish that there is no chance of him ever doing anything again. In fact, we upheld a finding of permanent total disability for a carpenter with a physical impairment of 40 to 45% in similar circumstances in *J.B. Warrack Co. v. Roan*, 418 P.2d 986 (Alaska 1966).[7] Following his injury, the worker in *Roan* was "not qualified by education or experience to do other than odd jobs provided they are not physically taxing." *Id.* at 988. We found that the claimant's ability to do odd jobs did not preclude a finding of permanent total disability. In *Hewing v. Peter Kiewit & Sons*, 586 P.2d 182, 187 (Alaska 1978), we again discussed the "odd lot" doctrine, stating that if the worker's subsequent employment was in the "odd lot" category, it would not preclude a finding of permanent total disability. *Id.* Likewise, Kinter's possible future "sedentary work" does not preclude permanent total disability classification.[8]

5. We have, of course, faced cases where workers were "permanently totally disabled," *see, e.g., Peck v. Alaska Aeronautical,* —— P.2d ——, Op. No. 3312 (Alaska, May 6, 1988) (back injury to pilot); *Wilson v. Erickson,* 477 P.2d 998 (Alaska 1970) (degenerative arthritis), but the question of what "permanence" is has not been explicitly addressed.

6. Both doctors stated in depositions that Kinter, although injured and not educated, is not the type of person that can "just sit[ ] all day long and do[ ] nothing" or "sit[ ] around looking at the walls." Based on these observations, they said that Kinter might someday do "sedentary work" or "something that's productive and interesting."

7. The question in that case was mainly whether the worker was totally or partially permanently disabled. *Roan,* 418 P.2d at 987.

8. The Board noted that there had been no evidence produced indicating that Kinter could perform regular continuous work. Alaska International argues that this statement shows that the Board improperly placed the burden on them to rebut the finding that Kinter could perform only "odd lot" labor, and that this, in effect, amounted to a presumption of permanent total disability in Kinter's favor. We believe Alaska International's argument is meritless; the Board simply weighed the evidence and commented upon the lack of evidence on one side of the scale. It did not apply any presumption; it simply noted that Kinter made out a prima facie case, and since Alaska Interna-

The Board found that Kinter was in this category of workers who could only perform odd lot labor, and that his condition was permanent. Thus, it concluded that he was permanently totally disabled. We hold that there was substantial evidence that Kinter's condition would "last[ ] the rest of [Kinter's] life," 2 A. Larson, *supra* p. 5, at 10–42, and that he would never be able to do anything but odd lot labor. Accordingly, we affirm the determination that he is permanently totally disabled.

## ATTORNEY'S FEES

The Board found that Alaska International controverted and resisted payment of permanent total disability compensation, and awarded Kinter ten percent statutory attorney's fees based on the compensation awarded to Kinter by the Board.[9]

The award of attorney's fees in workers' compensation cases is governed by AS 23.-30.145 which provides in part:

> (a) ... When the board advises that a claim has been controverted, in whole or in part, the board may direct that the fees for legal services be paid by the employer or carrier in addition to compensation awarded; the fees may be allowed only on the amount of compensation controverted and awarded.

■ Alaska International argues that the Board applied the statute erroneously because it awarded attorney's fees on amounts which were not in controversy. Because they had been paying Kinter temporary total disability benefits of $638.91 per week since his injury, and had asked the Board at the hearing to award Kinter a lump sum of $60,000 to resolve the case, Alaska International contends that these amounts were not controverted. Kinter argues that since Alaska International controverted compensability, all sums due

were properly subject to statutory attorney's fees.

We agree with the Board and superior court that Kinter's claim was "controverted, in whole or in part." AS 23.30.145(a).[10] In their September 27, 1984 Answer to Kinter's Application for Adjustment of Claim, Alaska International stated that it "den[ies] that Oscar Kinter is permanently and totally disabled." Further, Alaska International stated in its Answer that it

> deny liability in this case because the claimant had a pre-existing condition and his current problems arise out of that condition, rather than the minor incident which occurred in February of 1983.

We find this outright denial of liability an attempt to resist payment of benefits, and, therefore, this claim was in fact controverted.

Moreover, we find that Alaska International's denial of liability was a controversion of Kinter's *entire* claim. By its Answer, Alaska International put into issue the question whether Kinter was entitled to payments from Alaska International at all. Thus, Kinter's attorney presumably was forced to research the question and prepare to argue that Alaska International was in fact liable for all benefits it had been paying.

We are unpersuaded by Alaska International's contention that, because it paid Kinter temporary total disability benefits, which are the same weekly amounts as permanent total disability benefits (*see* AS 23.30.185; AS 23.30.180), there was no "*amount* of compensation controverted and awarded." AS 23.30.145(a). Despite its payments to Kinter, the Answer reveals unambiguously that Alaska International in fact denied any liability to Kinter at all. Any payments they made after the Answer

tional produced nothing to support its contention, Kinter met his burden.

9. The Board awarded attorney's fees on the "compensation awarded for the period from June 24, 1985 and continuing." This is the date that active vocational rehabilitation efforts ceased and the date the Board determined Kinter's condition became permanent, not temporary.

10. "[T]he award of the minimum statutory fees applies only in cases where a claim has been controverted." *Haile v. Pan American World Airways*, 505 P.2d 838, 840 (Alaska 1973) *quoted in Bailey v. Litwin*, 713 P.2d 249, 258 (Alaska 1986).

was filed were not voluntary;[11] the Answer establishes that Alaska International was reserving the right to deny *any* liability on Kinter's claim. Thus, all the amounts paid after the Answer was filed were controverted.

We conclude that on September 27, 1984, Alaska International controverted 100% of the amount claimed by Kinter. As such, the Board had the right to direct Alaska International to pay statutory fees on the amount awarded from June 24, 1985.

AFFIRMED.

---

11. In *Bignell v. Wise Mechanical Contractors,* 651 P.2d 1163, 1169 (Alaska 1982), we agreed with a Board finding that since an employer "voluntarily tendered" $6,000 to an injured employee, that amount was not controverted and attorney's fees could not attach to that payment. In that case, however, the employer paid the $6,000 to the injured worker entirely voluntarily *before* any issue of compensability at all was controverted. Here, Alaska International was essentially making payments "under protest."