**FISCHBACK & MOORE OF ALASKA, INC.,**
*Appellant,*

v.

**Frank LYNN, and the Alaska Workmen's
Compensation Board, Appellees.**

**No. 1002.**

Supreme Court of Alaska.

April 25, 1969.

Robert C. Erwin, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellant.

James K. Tallman, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

OPINION

RABINOWITZ, Justice.

This is the third time that issues in this workmen's compensation case have reached this court.[1]

On October 12, 1962, appellee sustained an injury arising out of and in the course of his employment. After a hearing on January 23, 1964, the Alaska Workmen's Compensation Board reached a decision in which it denied appellee's application for permanent partial disability.[2] In its findings of fact, the Board, in part, found that the "applicant's hand and arm is not disabled in any extent which can be related to the industrial injury." In its conclusions of law, the Board decided:

(2) That the applicant was temporarily disabled as a result of said injury but was cured and applicant was released to work as of the 18th of November, 1963.

(3) That the applicant has no disability of his right hand and right arm which is related to the industrial injury.[3]

Appellee then appealed the Board's decision to the superior court. While the matter was on appeal to the superior court, the Board issued an ex parte order requiring appellant to pay the costs of additional neurosurgical and orthopedic examinations of appellee. Appellant moved to enjoin the Board from carrying out its ex parte order, and additionally sought affirmance of the

Board's decision of March 9, 1964, which denied appellee compensation. The superior court remanded the case to the Board for the "purpose of taking additional testimony after the physical examinations have been completed which the Board has ordered." In our first opinion in this case, we reversed the superior court's remand.[4] After this court's mandate was issued, the superior court affirmed the Board's decision of March 9, 1964. Appellee did not appeal the superior court's affirmance.

Pursuant to the Board's ex parte order, additional medical reports were submitted to the Board. On July 20, 1966, the Board issued its second decision in this case. In its findings of fact the Board found that appellee had "a full permanent disability to his right hand." Concerning its initial 1964 decision, the Board further found that it had made a mistake of fact in that it had

denied permanent disability to the right hand on January 23, 1964 and in fact, there was at the time of said hearing an 80 per cent permanent disability and as a result of the passage of time and the injuries received by the applicant, said permanent disability to the right hand is now 100 per cent.[5]

The Board awarded appellee $7,500 for total permanent disability to his right hand. The case was then appealed to the superior court which upheld the Board's second decision. The superior court's affirmance of this award of compensation to appellee was then appealed to this court. We concluded

---

1. *See* our prior decisions in Fischback & Moore of Alaska, Inc. v. Lynn, 430 P. 2d 909 (Alaska 1967), and Fischback & Moore of Alaska, Inc. v. Lynn, 407 P. 2d 174 (Alaska 1965).

2. Appellee had received temporary disability payments and medical care prior to this ruling.

3. Subsequent to the January 23, 1964, hearing and prior to the entry of its March 9, 1964, order, the Board wrote to appellant's counsel. In this letter of January 29, 1964, the Board requested counsel to "draft a proposed decision for the Board's use." In addition, the Board also informed counsel that, "The Board has found in this matter that

there is no permanent partial disability of the hand and that the applicant's application is to be dismissed."

4. Fischback & Moore of Alaska, Inc. v. Lynn, 407 P.2d 174 (Alaska 1965).

5. The Board additionally determined that a change in condition had occurred in appellee's right hand since the time of the first hearing. In this regard the Board's findings stated:

[T]he evidence shows that a change in condition has occurred in the applicant's right hand in that the extent of permanent disability of said right hand is greater now than it was at the time of the previous hearing of this case, namely, January 23, 1964.

that the case had to be remanded to the Board for more explicit findings of fact in regard to the findings relating to the modification-of-awards provisions of the Alaska Workmen's Compensation Act.[6] Under this section of Alaska's Workmen's Compensation Act, the Board is empowered to modify a decision it has made under the following circumstances:

> Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions *or because of a mistake in its determination of a fact*, the board may, before one year after the date of the last payment of compensation, whether or not a compensation order has been issued, *or before one year after the rejection of a claim*, review. a compensation case in accordance with the procedure prescribed in respect of claims in § 110 of this chapter. [for processing initial claims] In accordance with § 110 of this chapter the board may issue a new compensation order which terminates, continues, reinstates, increases, or decreases the compensation, *or award compensation.*[7] (emphasis added)

In our second opinion we alluded to the fact that Alaska's modification-of-awards section was substantially similar to 33 U. S.C. section 922 of the Longshoremen's and Harbor Workers' Compensation Act. There we adopted the criteria formulated by the second circuit in Jarka Corp. v. Hughes,[8] which case was decided under the federal modification-of-awards provisions. In *Jarka* the court held at 537:

> In order to modify a previous order on the theory of mistake, a new order should make it clear that it is doing so, should review the evidence of the first hearing and should indicate in what respect the first order was mistaken—whether in the inaccuracy of the evidence, in the impro-

priety of the inferences drawn from it, or, as may be true in the present case, because of the impossibility of detecting the existence of the particular condition at the time of the earlier order.

Applying *Jarka's* criteria to the Board's findings, we remanded the case "in order to afford the board the opportunity of entering findings which meet the *Jarka* standards as to mistake of fact" and change of condition.[9] Subsequent to our remand, the Board entered "Supplemental Findings to Decision dated July 20, 1966." Thereafter, the superior court again affirmed the second decision of the Board as supplemented by the Board's additional findings and this present appeal followed.

In its supplemental findings, the Board, in part, found that:

> 1. The applicant was injured on October 12, 1962, while employed by the defendant when an approximate three-foot long steel jackhammer rotator drill broke off and hit him across the right wrist.

> 2. At the January 23, 1964 hearing, Dr. R. E. Harrell, a general practitioner and the applicant's treating physician at that time, testified that the circulation of the hand was impaired due to injury of the nerves to the hand and wrist. His personal opinion * * * was that the applicant has a 90% permanent disability to the hand.

> 3. Dr. George Wichman, an orthopedic surgeon who had treated the applicant, testified on January 23, 1964, in answer to the question if it was his testimony that the applicant does have a disability: 'Well, yes, I have said that.' * * * Dr. Wichman also described to the Board, methods he believed were being used by the applicant which was resulting in continuing disability to the hand, such as holding it in a pendant posi-

---

6. Fischback & Moore of Alaska, Inc. v. Lynn, 430 P.2d 909 (Alaska 1967).

7. AS 23.30.130(a).

8. 299 F.2d 534 (2d Cir. 1962).

9. Fischback & Moore of Alaska, Inc. v. Lynn, 430 F.2d 909, 911–912 (Alaska 1967).

tion, disuse, and by putting the hand in hot water.[10]

\* \* \* \* \* \*

6. The Board re-considered the matter on June 19, 1966, at which time it had medical reports of examination and treatment to the applicant's hand by Dr. Harold Bartko \* \* \* Dr. Perry Mead, a neurosurgeon \* \* \* and Dr. Francis O'Brien \* \* \*.

7. It was Dr. Mead's impression that the applicant's condition was (1) residuals of contused right median and radial nerves, and (2) reflex sympathetic dystrophy, secondary to the contused nerves. He also set out that he believed the applicant could have been helped by surgical procedure but success was now doubtful because of the lapse of time since injury. He believed the applicant's hand to be 100% disabled.

8. It was Dr. Harold Bartko's impression that applicant had (1) an injury to the median nerve at the wrist; (2) carpal tunnel compression of median nerve syndrome; and (3) disuse syndrome. He also believed surgical and physiotherapy treatement might restore the hand to functional capacity.[11]

\* \* \* \* \* \*

10. The applicant testified that the condition of the hand was the same thing for which he had come before the Board about two years ago.

In light of these facts, the Board reached the conclusion that it had "made a mistake in determining a fact" in its initial decision of March 9, 1964. More particularly, the Board concluded it had made a mistaken factual determination that:

It found no disability to the hand related to the injury when in fact both Dr. Harrell and Dr. Wichman testified that there was such a disability. The Board erred in giving weight to Dr. Wichman's speculative testimony that disability was caused by applicant's disuse of the hand. · The record is clear that the applicant had no problems with his hand prior to the injury and disability thereafter, real or imaginary, was related to the industrial injury.[12]

In its conclusions of law, the Board also determined that there had been a change in appellee's condition since the January 23, 1964, hearing.[13] On these findings of fact

10. Finding number 3 also contained the following:
When describing the nerves of the hand, Dr. Wichman said, 'The radial nerve has a very little importance here and actually doesn't \* \* \* is not related to this area at all.' And, ' \* \* \* the supply (nerves) to the fingers comes out completely different areas of the neck (?) and cannot be damaged the same time.'

11. The Board, in part, found that Dr. O'Brien concluded, "I would consider this a 100% disability of the right hand, and feel that the case should be concluded as soon as possible to avoid expense to all parties concerned."

12. In its conclusions of law, the Board further sets out two additional "mistakes of fact," namely:
b. The Board mistakenly relied on inaccurate testimony of Dr. Wichman that all the nerves of the hand could not be injured at the same time, and that the radial nerve had little importance in this case. \* \* \* Dr. Mead believes the applicant's condi-

tion is due to contusion of the radial and median nerves.
c. The Board finds it made a mistake when it did not order the applicant examined by a competent neurologist when evidence and the nature of the injury indicated possible nerve damage, but rather, relied on the testimony of a doctor of general practice and one of orthopedics.

13. In regard to this aspect of the Board's conclusions of law, the record shows the Board determined
a. [T]hat the permanent disability to the applicant's hand of some disability to 90% in January, 1964, has now changed to 100% permanent loss of use of the right hand resulting from the injury of October 10, 1962.
b. The Board also finds from the medical reports that the applicant's hand condition probably could have been aided by surgical procedure in 1964, but due to the interval of time since injury, the condition has changed to where success of surgical procedure is doubtful.

and conclusions of law, the Board ultimately ruled that it was

> not in accord with its initial conclusion of law dated March 9, 1964, to the effect that the disability to the applicant's right hand was not connected to the October 10, 1962 industrial accident. The Board concludes that the applicant suffers a 100% permanent loss of use of the right hand due to the industrial injury of October 10, 1962, and the defendant is ordered to pay to the applicant the sum of $7,500, reasonable and necessary medical costs, and attorney fees as set out in conclusions of law in the Board's order dated July 20, 1966.

In this appeal appellant advances the argument that the superior court erred in affirming the Board's second decision, as supplemented by the additional findings of fact and conclusions of law which were entered by the Board after our remand, because the Board was bound by the doctrine of res judicata. Appellant points to the original finding of the Board to the effect that "applicant has no disability of his right arm which is related to the industrial injury." Appellant interprets this language as a finding that the injury of appellee was not caused by the October 12, 1962, accident, and that this finding was therefore res judicata upon the issue of causation and was not subject to relitigation in any subsequent workmen's compensation proceeding.[14]

In a relatively recent opinion, the Supreme Court of the United States has resolved questions concerning the doctrine of res judicata under the modification-of-awards section of the Longshoremen's and Harbor Workers' Compensation Act. This section of the federal act served as the model for Alaska's modification-of-awards section. In Banks v. Chicago Grain Trimmers Ass'n,[15] petitioner's husband, shortly after returning home from work, suffered a fall that resulted in his death. Petitioner then filed a claim for compensation on behalf of herself and her three minor children. The petitioner alleged that her husband's fall resulted from a work-connected injury suffered four days prior to his fall. On June 8, 1961, the deputy commissioner rejected petitioner's claim on the ground she failed to establish that her husband's death had resulted from a work-connected injury. No action was thereafter instituted in district court by petitioner to have the deputy commissioner's decision denying compensation set aside. Subsequently, petitioner discovered an eye-witness to a work-connected injury suffered by her husband, which injury had occurred on the same day that he fell at home. On August 21, 1961, the petitioner filed a second compensation action against respondent alleging that her husband's fall resulted from a work-connected injury sustained on the day of the fall. After hearing, the deputy commissioner entered findings of fact and an award for petitioner. The district court affirmed, but the court of appeals reversed, holding petitioner's second compensation action was barred by the doctrine of res judicata. Before the Supreme Court of the United States the petitioner contended that the doctrine of res judicata had been made inapplicable to her case by the modification-of-awards section of the Longshoremen's and Harbor

---

14. Appellant cites Power v. Joseph G. Moretti, Inc., 120 So.2d 443, 446 (Fla. 1960). In this case the court held, under a statute similar to the federal Longshoremen's and Harbor Workers' Compensation Act, that:
> It is well established that in order to justify the modification of a compensation order on the basis of a mistake, the subsequent showing must consist of something more than additional evidence of facts already known, an ac-

cumulation of testimony on facts previously established a mere change of mind by a witness, or a reanalysis of the prior record by the deputy and a change of his conclusions as a result of a retrospective exploration of the original record.

15. 390 U.S. 459, 88 S.Ct. 1140, 20 L.Ed. 2d 30 (1968), rehearing denied, 391 U.S. 929, 88 S.Ct. 1800, 20 L.Ed.2d 671 (1968).

Workers' Compensation Act.[16] Petitioner further argued that her second compensation action came under the modification-of-awards section of the Longshoremen's and Harbor Workers' Compensation Act "because it challenged a 'determination of fact by the deputy commissioner' in her original compensation action—namely, the finding that her husband's fall did not result from a work-connected injury." On the other hand, the respondent argued that "a mistake in a determination of fact" in the modification-of-awards section "refers only to clerical errors and matters concerning an employee's disability, not to matters concerning an employer's liability." In ruling in favor of petitioner's contention, Mr. Justice Stewart, writing for a unanimous court, said:

> We find nothing in this legislative history to support the respondent's argument that a 'determination of fact' means only some determinations of fact and not others. The respondent points out that the recommendations of the Compensation Commission prior to the 1934 amendment referred to analogous state laws; but those recommendations dealt with the time period in which review was to be available, not with the grounds for re-

view. The respondent has referred us to no decision, state or federal, holding that a statute permitting review of determinations of fact is limited to issues relating to disability. In the absence of persuasive reasons to the contrary, we attribute to the words of a statute their ordinary meaning, and we hold that the petitioner's second compensation action, filed a few months after the rejection of her original claim, came within the scope of § 22.[17]

In a footnote to this portion of the court's opinion, it was further stated that:

> It is true that the statute as enacted in 1927, permitting review only 'on the ground of a change in conditions,' might have supported a distinction between issues of disability and liability. But after the 1934 and 1938 amendments, permitting review of 'a determination of fact' and authorizing the Deputy Commissioner to 'award compensation' even where the original claim is rejected, the asserted distinction can draw no support from the statutory language.[18]

We believe that *Banks* is dispositive of appellant's res judicata contentions in the case at bar.[19] As we have hereto-

16. 33 U.S.C. § 922 provides in part:
   Upon his own initiative, or upon the application of any party in interest, on the ground of a change in conditions or because of a mistake in a determination of fact by the deputy commissioner, the deputy commissioner may, at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 919 of this title, and in accordance with such section issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation.

17. Banks v. Chicago Grain Trimmers Ass'n, 390 U.S. 459, 88 S.Ct. 1140, 1144, 20 L.Ed.2d 30, 36 (1968), rehearing

denied, 391 U.S. 929, 88 S.Ct. 1800, 20 L.Ed.2d 671 (1968) (footnotes omitted).

18. *Id.* n. 7.

19. In analyzing the legislative history of the Longshoremen's and Harbor Workers' Compensation Act, Mr. Justice Stewart, in speaking for the court, wrote at 88 S.Ct. 1140, 1144, 20 L.Ed.2d 30, 35–36:
   In 1934 Congress * * * [amended] § 22 to permit review 'any time prior to one year after the date of the last payment of compensation.' * * * At the same time Congress added a second ground for review by the Deputy Commissioner: 'a mistake in a determination of fact.' The purpose of this amendment was to 'broaden the grounds on which a deputy commissioner can modify an award' by allowing modification where 'a mistake in a determination of fact makes such modification desireable in order to render justice under the act.' S.Rep. No. 625, 73d

fore pointed out, the modification-of-awards provision found in AS 23.30.130(a) of Alaska's Workmen's Compensation Act is in all respects substantially similar to its federal counterpart found in 33 U.S.C. section 922 of the Longshoremen's and Harbor Workers' Compensation Act. Assuming that the Board's first decision, handed down in 1964, went off on the ground of appellant's non-liability, or lack of causal nexus between the industrial accident and the claimed disability, we can perceive nothing in the language of the text of AS 23.30.130 (a) which would limit the "mistakes in determination of fact" basis for review to issues relating solely to disability. In adopting the *Banks'* analysis of the federal modification-of-awards statute, we hold that under Alaska's parallel workmen's compensation provisions there is no limitation as to the type of fact coming within the ambit of the statutory "mistake in its determination of a fact" review criterion. More particularly, under AS 23.30.130(a), the Board has the authority to review an order in which a claim has been rejected because of a mistake in its determination of a fact even if the fact relates to the question of liability or causation.[20]

■ Concerning the substantive aspects of the Board's supplemental findings of fact and conclusions of law pertaining to the Board's mistaken determination of fact, we hold that the superior court was correct in affirming these findings of the Board. Study of the record and the Board's supplemental findings leads to the conclusion that the Board complied with the *Jarka*[21] criteria we adopted prior to our last remand. For it is clear that the Board modified its initial order denying compensation on the ground of mistake in its determination of fact. In its supplemental findings and order, the Board reviewed the evidence of the first hearing and indicated in what respect the first order was mistaken. More specifically, it is now apparent that the Board's mistake in its determination of fact was attributable to "the impropriety of the inferences" it drew from the evidence which was produced at the first hearing. Thus, the Board's supplemental findings and order, as to mistake of fact, conform to the *Jarka* standards.

■ Matters of form aside, the heart of the Board's supplemental findings and order is its conclusion that a fact was mistakenly determined when

· [i]t found no disability to the hand related to the injury when in fact both Dr. Harrell and Dr. Wichman testified there was such a disability

and further mistakenly gave weight to Dr. Wichman's "speculative" testimony that appellee was malingering. On the basis of these mistakes of fact, the Board ultimately ruled that it was no longer in accord with its initial conclusion that the disability to applicant's right hand was not connected to the October 10, 1962, industrial accident. We believe that the Board's findings as to mistake of fact and its ultimate conclusions

Cong., 2d Sess., 3–4 (1934) ; H.R.Rep. No. 1244, 73d Cong., 2d Sess., 4 (1934).

* * * Congress responded in 1938 by amending § 22 to permit review by the Deputy Commissioner 'at any time prior to one year after the rejection of a claim' and to allow the Deputy Commissioner after such review to 'award compensation.' 52 Stat. 1167. The purpose of this amendment was to extend 'the enlarged authority therein (1934 amendment) provided to cases in which the action of the deputy commissioner has been a rejection of the claim.' S.Rep. No. 1988, 75th Cong.,

3d Sess., 8 (1938) ; H.R.Rep. No. 1945, 75th Cong., 3d Sess., 8 (1938).

20. *Compare* Judge Folta's statement in Suryan v. Alaska Indus. Bd., 12 Alaska 571, 573· (D.C.Alaska 1950), where he said in part:

[A]lthough the question of res judicata may lurk in the background, it is not involved in this proceeding, because if the power to rehear exists, the doctrine of res judicata is inapplicable and likewise, if the power does not exist, no occasion arises for invoking it.

21. Jarka Corp. v. Hughes, 299 F.2d 534 (2d Cir. 1962).

drawn therefrom are supported by substantial evidence and should be affirmed.[22]

▪ As pointed out by the Board in its supplemental findings at the 1964 hearing, Dr. R. E. Harrell, a general practitioner and treating physician, testified that appellee's circulation was impaired due to injury to nerves to the hand and wrist. Dr. Harrell also testified that in his opinion appellee had sustained a 90 per cent permanent disability to his hand. In conjunction with the 1966 hearing, the medical reports of Doctors Bartko and Mead were before the Board. The latter, a neurosurgeon, diagnosed appellee's physical disability as residuals of contused right median and radial nerves; reflex sympathetic dystrophy, secondary to the contused nerves. Dr. Mead concluded that appellee's hand was 100 per cent disabled. In Dr. Bartko's opinion, appellee suffered from an injured median nerve at the wrist, together with carpal tunnel compression of median nerve syndrome and disuse syndrome.[23]

On the basis of the foregoing, we conclude that there was substantial evidence to support the Board's conclusion that it had mistakenly determined facts in that the inferences which it drew from the evidence at the first hearing were improper.[24] On the other hand, we hold that the Board's supplemental findings regarding appellee's change of condition as it relates to AS 23.30.130(a) are not supported by substantial evidence. In Jarka Corp. v. Hughes[25] the court said:

> Change in condition necessarily implies a change from something previously existing. In this context, it must refer to a change from the condition at the time of the award which is being modified.

Review of the evidence does not sustain the Board's conclusion that appellee's condition changed from the time of the first hearing. Since we have found that there is substantial evidence to support the Board's supplemental findings and final order in regard to the mistaken determination of fact aspect, we hold that the superior court's affirmance of the Board's supplemental findings and order is affirmed.

22. In regard to the substantial evidence test see Aleutian Homes v. Fischer, 418 P.2d 769, 776 (Alaska 1966), and Morrison-Knudsen Co. v. Vereen, 414 P.2d 536, 542 (Alaska 1966).

23. The appellee was under no obligation to produce newly discovered evidence to invoke the Board's review jurisdiction under AS 23.30.130(a). *See* Stansfield v. Lykes Bros. S.S. Co., 124 F.2d 999 (5th Cir. 1941); Hall v. Seaboard Maritime Corp., 104 So.2d 384 (Fla.Dist. Ct.App.1958).

24. In this regard the record can be viewed as one in which the Board concluded it had mistakenly determined the factual issue of whether appellee was malingering. Study of the Board's initial findings, particularly in view of the Board's letter to appellant's counsel, *see* n. 3 *supra*, lends support to the conclusion that the Board in fact had redetermined disability and not the question of causation or appellant's liability under the compensation act. *Compare* Manthey v. Collier, 367 P.2d 884 (Alaska 1962).

25. 299 F.2d 534, 536 (2d Cir. 1962).