John LINDEKUGEL, Appellant,

v.

GEORGE EASLEY CO., Providence Washington Insurance Co., Appellees.

Nos. S–8417.

Supreme Court of Alaska.

Sept. 10, 1999.

**11.**  Op. at 875.

William J. Soule, Law Office of William J. Soule, Anchorage, for Appellant.

David W. Baranow, Law Offices of David W. Baranow, Anchorage, for Appellees.

Before: MATTHEWS, Chief Justice, EASTAUGH, and BRYNER, Justices.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

We must decide here whether a permanent total disability settlement disqualifies an employee from subsequent disability claims. We hold that it does not and therefore remand for further consideration of the employee's claim.

### II. FACTS AND PROCEEDINGS

John Lindekugel suffered two on-the-job injuries while working for different employers. In 1976 he was severely injured while employed by Fluor Alaska (Fluor). After multiple surgeries, his physician deemed him permanently and totally disabled (PTD). Lindekugel eventually settled a claim for workers' compensation benefits with Fluor's insurers.

He retired to his ranch in Montana, supporting himself with the proceeds and interest of his settlement, and social security, veteran's, and other benefits. Two years later, a doctor examined him for the social security administration and determined that he could return to medium-duty carpentry. As a result, the federal government terminated his social security benefits and he returned to Alaska to resume working.

On the sixth or seventh day of a new job with George Easley Company (Easley), he suffered a fall. He thereafter underwent multiple additional surgeries. He has not worked since his fall at Easley, and the parties agree that he is now permanently and totally disabled. Lindekugel attributes his disability to his fall at Easley, while Easley attributes it to his original injury at Fluor.

Lindekugel sought temporary or permanent total disability payments from Easley.[1] The Alaska Workers' Compensation Board denied his claim, determining that his symptoms were caused by his injury at Fluor and

---

1. Although he did not seek compensation from Fluor at that time, Lindekugel is currently pursuing a separate claim against Fluor. *See Lindeku-* *gel v. Fluor Alaska, Inc.,* 934 P.2d 1307 (Alaska 1997).

not his fall at Easley. The board also determined that Lindekugel could not seek additional benefits after receiving lifetime benefits for permanent disability, reasoning that such an award would amount to payment for a "second lifetime." The superior court upheld this decision. Lindekugel appeals.[2]

## III. DISCUSSION

### A. Standard of Review

■ Because the superior court acted as an intermediate court of appeal, we accord no deference to its decision.[3] We will affirm the board's factual determinations if they are supported by substantial evidence[4] and we will apply the "substitution of judgment" test to questions of law not involving board expertise.[5] To the extent that we deal with legal issues of first impression, we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy.[6]

### B. The Board Erred in Assuming the Impermissibility of Successive Settlements.

■ The board determined that Lindekugel's settlement with Fluor barred his claim. In doing so, the board assumed that a PTD settlement automatically disqualifies any future claims: " 'Permanent means lasting the rest of claimant's life.' In this case, given that the employee has accepted a [Compromise & Release] payment from Fluor cover-

ing the rest of his life, we find he cannot expect to receive payment for a second lifetime from a second employer."[7]

■ The board misinterpreted the concept of permanent disability as it is understood under the Alaska Workers' Compensation Act.[8] In *Ketchikan Gateway Borough v. Saling*,[9] we implicitly read the Act to encompass a classification of PTD that is subject to change.[10] We there rejected the board's conclusion that a second employer could not be held liable for an injury based in part on its finding that the employee was permanently and totally disabled prior to his employment.[11]

We held that the board's reasoning misinterprets the concept of disability in Alaska worker's compensation law.[12] We noted that the Act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."[13] Accordingly, we recognized that "the primary consideration is not the degree of the worker's physical impairment, but rather the loss of earning capacity related to that impairment."[14]

Based on loss of earning capacity, disability under the Act further includes an educational component; we have held that an employee who suffers a physical impairment can overcome a concomitant loss of earning capacity through education or vocational re-

2. Providence Washington Insurance Company, Easley's insurer, is also a party to this appeal. Since Easley and Providence Washington have filed a joint brief, we will not distinguish between them in discussing their arguments.

3. See *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

4. See *Yahara v. Construction & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993).

5. *Municipality of Anchorage, Police & Fire Retirement Bd. v. Coffey*, 893 P.2d 722, 726 (Alaska 1995).

6. See *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

7. The board quoted *Alaska International Constructors v. Kinter*, 755 P.2d 1103, 1105 (Alaska 1988) (quoting 2 A. Larson, *The Law of Workmen's Compensation* § 57.13, at 10–42 (1986)).

The board interpreted this case to support the proposition that a PTD settlement automatically precludes an employee from a second disability claim. *Kinter* does not support such a broad proposition; it concerns the medical circumstances under which a disability should be classified as permanent. See *id.*

8. AS 23.30.005–.400.

9. 604 P.2d 590 (Alaska 1979).

10. See *id.* at 593–98.

11. See *id.*

12. See *id.* at 594.

13. *Id.* (quoting AS 23.30.041(10)).

14. *Id.*

habilitation.[15] In fact, the Act expressly provides for training and education of permanently impaired employees to facilitate their reemployment.[16]

Although an employee will not be classified as PTD unless his or her injury appears permanent,[17] this classification is not immutable. To hold otherwise would be to conflict with the language of the Act,[18] with this court's precedent,[19] and with the United States Supreme Court's decision in *Alaska Industrial Board v. Chugach Electric Ass'n.*[20]

Furthermore, prohibiting successive settlements would undermine Alaska's policy of promoting reemployment of disabled workers. This policy is reflected in the creation of the second-injury fund, which reimburses employers for compensation payments made to previously injured workers.[21]

### C. The Board's Error Was Not Harmless.

We have considered whether it is appropriate to affirm the board's decision on the basis that any error in interpreting the legal significance of Lindekugel's PTD settlement was harmless. The superior court determined that the board's consideration of the proper legal standard for assessing Easley's liability neutralized the effect of its error. We agree with the superior court that the board properly analyzed Easley's liability by applying the last injurious exposure rule. But because the board's decision leaves unclear whether its analysis under the last injurious exposure rule provided an independent basis for its decision denying Lindekugel's claim, we cannot affirm it.

The last injurious exposure rule provides the proper standard for determining Easley's liability.[22] That rule states that the employer at the time of a worker's most recent injury is liable for the aggravation of an existing injury if the most recent injury bears a causal relation to the disability such that it constitutes the "last injurious exposure."[23] An injury qualifies as a second injury if it aggravates, accelerates, or combines with a pre-existing condition, and the aggravation is a "legal cause" of the disability.[24]

The board concluded that Easley was not liable because the fall at Easley did not aggravate Lindekugel's condition:

[B]ased on Dr. Voke's [ (the treating physician) ] medical testimony, we find the employee's claims for all benefits requested must also be denied.... The defendants assert, and we find, the medical testimony and opinions of Dr. Voke, that the October 1981 work for the employer did not substantially aggravate the condition, are substantia[l] evidence to overcome the pre-

---

**15.** *See Meek v. Unocal Corp.,* 914 P.2d 1276, 1279 (Alaska 1996).

**16.** *See* AS 23.30.041.

**17.** *See Kinter,* 755 P.2d at 1102–03. Because Lindekugel settled his case with Fluor, the board never adjudicated his disability status. Instead Fluor and Lindekugel negotiated a settlement amount apparently based partly on Dr. Voke's assessment that Lindekugel's disability was permanent. For purposes of our discussion, this fact is immaterial. The rationales underlying our holding that an adjudicated designation of PTD does not disqualify legitimate future claims apply with equal force where a PTD settlement has been reached.

**18.** By explicitly providing for compensation for PTD "during the continuance of the total disability," the Act implicitly recognizes that the designation of permanence is subject to change. *See* AS 23.30.180. Dramatic improvements in an employee's condition would change his or her classification, as would a demonstration of a

renewed earning capacity. *Cf. Underwater Constr., Inc. v. Shirley,* 884 P.2d 156, 160–61 (Alaska 1994).

**19.** We rejected precisely this type of reasoning by the board in *Saling,* 604 P.2d at 593–94.

**20.** 356 U.S. 320, 324, 78 S.Ct. 735, 2 L.Ed.2d 795 (1958) (holding that employee who received statutory lump sum payment for PTD was entitled to additional temporary total disability payments if there was continuing ability to do work).

**21.** *See* AS 23.30.040, .205; *see also Employers Commercial Union Ins. Group v. Christ,* 513 P.2d 1090, 1093 (Alaska 1973).

**22.** *See Saling,* 604 P.2d at 595–98.

**23.** *United Asphalt Paving v. Smith,* 660 P.2d 445, 447 (Alaska 1983).

**24.** *Id.*

sumption [that Lindekugel's fall at Easley aggravated his injury].

Although the board applied the last injurious exposure rule, we cannot determine the extent to which the board based its decision on its analysis under this standard. The board's decision seems heavily influenced by its presumption of disqualification. Because the board may have assessed the evidence, including Dr. Voke's testimony, in light of its legal misapprehension that Lindekugel's PTD status barred him from making a total disability claim, we cannot say how the board would have assessed Lindekugel's case without that legal error. In fact, Dr. Voke himself appeared to assume that a PTD rating necessarily described a status that, once given, could never change. Thus, in testifying before the board, he categorically refused even to consider the possibility that Lindekugel might be capable of returning to work. If the board relied on any such assumption in Dr. Voke's testimony, its findings of fact tacitly must have incorporated the same legal mistake reflected in the board's legal misinterpretation of the concept of permanent disability. It is therefore necessary to remand the case for reconsideration. Because its rejection of Lindekugel's temporary total disability and medical claims was based on the same erroneous assumption that flawed its PTD analysis, the board should also reevaluate those claims on remand.

## IV. CONCLUSION

Because it was error for the board to base its decision on the assumption that Lindekugel's first PTD settlement barred any subsequent claims, and because the board's decision does not clearly indicate that it denied Lindekugel's claim based independently on its last injurious exposure analysis, we REMAND to give the board an opportunity to reconsider Easley's liability.

FABE and CARPENETI, JJ., not participating.