GEORGE EASLEY CO., and Providence Washington Insurance Company, Appellants,

v.

The ESTATE OF John LINDEKUGEL, through its personal representative, Cherie Lindekugel, Fluor Alaska, Cigna, and The Alaska Workers' Compensation Board, Appellees.

No. S–10851.

Supreme Court of Alaska.

July 22, 2005.

---

**17.** *See* AS 25.27.265(b).

See also, 934 P.2d 1307.

Patricia L. Zobel, Delisio Moran Geraghty & Zobel, Anchorage, for Appellants.

William J. Soule, Law Office of William J. Soule, Anchorage, for Appellee Estate of John Lindekugel.

Timothy A. McKeever, Holmes Weddle & Barcott, Anchorage, for Appellees Fluor Alaska, Inc. and CIGNA.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

The George Easley Company appeals the decision of the Alaska Workers' Compensation Board holding that it is liable for John Lindekugel's injuries and that it is not entitled to the three offsets it sought from Lindekugel's workers' compensation award. We affirm the board's finding that Easley is liable for Lindekugel's disability under the last injurious exposure rule and its denial of Easley's petitions to modify the award.

## II. FACTS AND PROCEEDINGS

### A. Facts

John Lindekugel suffered two separate accidents while working for two different employers. While working on the trans-Alaska oil pipeline in August 1976 as an employee of Fluor Alaska, Lindekugel fell off a ladder, landed on his lower back, and struck his head against the ground. He was treated on an out-patient basis for several months, and was later hospitalized for two weeks for pelvic traction. In January 1977 Lindekugel underwent a fusion of the cervical spine. In December 1977 and March 1978 Dr. Edward Voke, who had previously treated Lindekugel while he was hospitalized, performed additional surgeries on Lindekugel.

In May 1979 Lindekugel and Fluor entered into a settlement in which Lindekugel received $225,000 in exchange for waiving all claims against Fluor except for future medical benefits. For the purposes of the second injury fund only,[1] $60,000 of the award was deemed to be payment for "permanent partial disability." Lindekugel began receiving social security disability benefits in July 1977.

Lindekugel moved to Montana in August 1979. While in Montana Lindekugel was not

---

[1] If an employee suffers a compensable injury that results in temporary total disability, temporary partial disability, permanent partial disability, or permanent total disability, the employer or its insurance carrier must contribute a certain percentage of the employee's compensation payments into the second injury fund. AS 23.30.040. The purpose of the second injury fund is to ensure that employers who hire workers with compensable disabilities will not be financially liable for certain preexisting conditions caused by injuries for which the employee received compensation from another employer. AS 23.30.205; *Employers Commercial Unions Ins. Group v. Christ,* 513 P.2d 1090, 1093 (Alaska 1973).

employed, but he planted a garden, chopped wood, mowed the lawn, and remodeled his house, which required light carpentry work. While in Montana Lindekugel sought no medical attention for his neck or back. Lindekugel testified that by September 1981 he was able to walk without limping and had only minimal pain in his neck and back.

At the request of the Social Security Administration (SSA), Dr. John Davidson examined Lindekugel on January 15, 1981 and took x-rays of his spine. Dr. Davidson concluded that, although Lindekugel continued to experience some pain as a result of his 1976 injury, he was physically capable of returning to work. Shortly after the examination, Lindekugel received a letter from the Disability Determination Bureau of Montana's Department of Social and Rehabilitation Services. The letter stated the bureau's preliminary opinion, based upon the examination, that Lindekugel had the "capacity to engage in medium work activity." [2] Accordingly, the bureau forwarded the records to the SSA for a redetermination of Lindekugel's eligibility for benefits. The SSA's surgical consultant reviewed Dr. Davidson's report and concluded that the injury sustained by Lindekugel in August 1976 "should not interfere with [work] of a light nature where bending, lifting, and twisting can be controlled." On March 10, 1981 the SSA informed Lindekugel that he was able to do "substantial gainful work" as of January 1981 and that his entitlement to disability payments ended in March 1981.

Lindekugel returned to Alaska in August 1981 and began work as a carpenter for the George Easley Company (Easley) in October. The union hall had not asked whether he had any medical restrictions, nor did he volunteer such information. While working at Easley, Lindekugel was able to climb a ladder, set scaffolding, and use typical carpentry tools without difficulty.

On October 8, 1981, having worked at Easley for seven eight-hour days at the standard union rate of twenty dollars per hour, Lindekugel tripped and fell onto a cement floor while carrying a sheet of plywood. The plywood, which weighed approximately seventy-five pounds, landed on Lindekugel, injuring his back and right elbow.

Easley initially paid Lindekugel $21,655.85 in medical benefits, but controverted the claim on October 29, 1981. In February 1984 the SSA reinstated Lindekugel's disability benefits at a rate of $764 per month effective retroactively to April 1981. The SSA took an offset from Lindekugel's $225,000 settlement with Fluor, prorating the settlement at $357.59 per week. In the years following his accident at Easley, Lindekugel was seen by numerous physicians to treat his back injury and its consequences. Lindekugel was seen by Dr. Richard Nollmeyer for pain in his legs and feet in July 1984. He was also treated with a variety of pain medications by Dr. Curt Kurtz from 1985 to 1987. In 1986 Drs. Voke and Paul Dittrich performed back surgery on Lindekugel.

### B. Medical Testimony

Dr. Voke, the only doctor who had examined Lindekugel before and after the Easley injury, testified that Lindekugel's physical condition as of October 8, 1981 (after the Easley accident) was "identical with ... the years past" and that "nothing substantially happened as a result of [the Easley] injury." In a letter to Gil Johnson, Lindekugel's former attorney, Dr. Voke wrote "I feel simply that all operative procedures and his general condition are a direct result of his 1976 injury." The last time Dr. Voke had seen Lindekugel before the 1981 injury was in 1978, before Lindekugel moved to Montana. When Dr. Voke issued this opinion, he believed that a classification of permanent total disability (PTD) was immutable.

In *Lindekugel v. George Easley Co.*[3] (*Lindekugel II*),[4] we held that a PTD classifica-

---

**2.** In response to a later inquiry by Lindekugel regarding his possible return to carpentry work, the bureau stated "it appears this would be possible according to the medical information we have."

**3.** 986 P.2d 877 (Alaska 1999).

**4.** We earlier had decided Lindekugel's workers' compensation case involving Fluor. *Lindekugel v. Fluor Alaska, Inc.,* 934 P.2d 1307 (Alaska 1997) (*Lindekugel I* ).

tion is not immutable, and we remanded for the board to determine whether Lindekugel's medical condition had improved prior to his 1981 injury at Easley.[5] Subsequent to this decision, Dr. Voke stated in a December 1999 affidavit that he believed that Lindekugel showed "significant improvement in [his] symptoms and range of motion since he was seen ... in 1978." He concluded that the 1981 injury was a "substantial factor" in worsening Lindekugel's condition. He also stated that Lindekugel would not have needed the two back surgeries performed after 1981 had it not been for the Easley injury. In a deposition taken in March 2000 Dr. Voke maintained his earlier position that the 1981 injury was an aggravation of the 1976 injury and not a new injury, but did not renounce his opinion that the Easley injury was a substantial factor in Lindekugel's post–1981 disability.

Several other physicians provided information concerning Lindekugel's condition over the years. In 1983 Dr. Davidson testified that he believed that Lindekugel was not in need of back surgery when he began work at Easley in 1981. Dr. Davidson stated that the facts surrounding Lindekugel's second injury were consistent with, and confirmed his opinion that, the Easley injury was a "substantial factor" in Lindekugel's medical condition and his need for additional surgical treatment.

In 1994 Dr. Nollmeyer expressed his opinion that: the 1981 injury was a cause of Lindekugel's disability; the 1981 injury aggravated, accelerated, or combined with Lindekugel's prior injury; the 1981 injury was a substantial factor in bringing about Lindekugel's disability; and that, but for the 1981 injury, Lindekugel would not be disabled to the same degree. Dr. Nollmeyer based his opinion on Lindekugel's medical history, a physical examination, and laboratory tests. Dr. Nollmeyer stated "with reasonable medical certainty" that Lindekugel "would not have had [the] severe disability that he has today and the excessive amount of medical expenses had it not been for the injury that he sustained in October of [19]81."

In 1994 Dr. Kurtz testified that Lindekugel was currently unable to return to work

and that his disabling condition was related to his 1981 injury at Easley. Dr. John Diggs, who examined Lindekugel in 1991, testified that, based on the examination and patient history, he did not believe that the 1981 injury was merely a temporary aggravation of the 1976 injury, because Lindekugel underwent additional surgeries after the 1981 injury. But he also testified that he had no way of knowing whether the 1981 injury was a new injury or an aggravation of the 1976 injury.

## C. Proceedings

In 1994 Lindekugel filed a complaint against his first attorney, Gil Johnson, who had represented him in the 1979 settlement with Fluor. Lindekugel alleged that Johnson dismissed Fluor from the case involving Easley without a determination of liability, tried to approve a $45,000 settlement with Easley which was rejected by the Alaska Workers' Compensation Board (AWCB) as being against Lindekugel's interest, was evasive, and had improperly delayed the case. The resulting settlement between Johnson and Lindekugel provided for a payment of $75,000, with the provision that Johnson would make an additional payment up to the limits of Johnson's malpractice insurance policy if either the decision of the board or of a reviewing court were "ultimately favorable" to Easley.

The board first heard Lindekugel's claim for temporary total disability or permanent total disability benefits on December 21, 1995. The board found that Dr. Davidson's testimony raised the presumption of compensability, but that the presumption was successfully rebutted by Dr. Voke's testimony that Lindekugel's condition was the direct result of his 1976 injury, so that Lindekugel "cannot expect to receive payment for a second lifetime from a second employer." The superior court affirmed, finding substantial evidence to support the board's determination that Lindekugel had been seriously injured "but once" and that the 1981 injury was neither a substantial aggravation of the 1976 injury nor a legal cause of the disability.

---

**5.** 986 P.2d at 881.

We reversed and remanded on September 10, 1999.[6] Relying on *Ketchikan Gateway Borough v. Saling*,[7] we "rejected the board's conclusion that a second employer could not be held liable for an injury based in part on its finding that the employee was permanently and totally disabled prior to his employment."[8] Although the board had used the proper legal standard to analyze Easley's liability, it erroneously presumed the immutability of a PTD determination and gave heavy weight to the testimony of Dr. Voke, who testified that one's PTD status could never change.[9]

Upon remand, the board issued its decision finding Easley liable under the last injurious exposure rule. The board used the two determinations required by the court in *Saling*: (1) whether the employment at the time of the second injury "aggravated, accelerated, or combined with" the first injury, and (2) whether the employment was a "legal cause," i.e., a "substantial factor" in bringing about the disability.[10]

The board found that Lindekugel's testimony concerning the 1981 injury, and the medical opinions of Drs. Nollmeyer, Kurtz, and Diggs regarding the aggravation of Lindekugel's injury, successfully raised the presumption of compensability.[11] The board held that Easley had not rebutted this presumption of compensability. The board found Easley's argument that Dr. Voke's testimony rebutted the presumption of compensability to be unpersuasive, finding instead that Dr. Voke "clearly recognized the employee's injury at Easley as a substantial factor aggravating and accelerating the employee's disability and need for additional treatment." The board also stated that, even if it could find substantial evidence to rebut the presumption of compensability, Easley was liable by a preponderance of the evidence. The board cited the "overwhelming preponderance" of medical testimony as the basis for its decision, particularly the opinions of Drs. Voke, Nollmeyer, Kurtz, and Diggs. The board ordered Easley to pay Lindekugel compensation at the rate of $357 per week, interest on any unpaid benefits, $59,475 in attorney's fees, and $3,447.32 in costs.

Easley filed a notice of appeal in October 2000 and received a stay of judgment pending review by the superior court in November 2000. Easley later filed three separate petitions with the board seeking to modify the compensation award under AS 23.30.130(a) with offsets for the PTD disability payment from Lindekugel's social security benefits, the Fluor settlement, and the legal malpractice settlement between Lindekugel and Johnson. The petitions were filed respectively on February 9, March 20, and April 4, 2001. The board held that it could not modify the award because the order was stayed while on appeal. The board also stated that, even if there were grounds for modification, it would deny all three petitions on their legal merits because the offsets Easley sought were not third party benefits under AS 23.30.015(h) and the Social Security disability benefits were for Lindekugel's 1976 injury.

The consolidated case was decided by Superior Court Judge Michael L. Wolverton on October 15, 2002. Judge Wolverton affirmed the board's finding that the 1981 injury was a legal cause of Lindekugel's disability and adopted the board's reasoning to deny Easley's petitions for offsets on the merits. Easley appeals.

### III. STANDARD OF REVIEW

We independently review the merits of an agency's decision when the superior court acts as an appellate court.[12] Whether the board properly applied the last injurious

---

6. *Lindekugel II,* 986 P.2d 877.

7. 604 P.2d 590 (Alaska 1979).

8. *Lindekugel II,* 986 P.2d at 879.

9. *Id.* at 881.

10. *Saling,* 604 P.2d at 597–98.

11. The board decided not to rely directly on Dr. Davidson's medical records and affidavit because he was unavailable to testify and the board believed it had enough evidence from the other doctors.

12. *Leuthe v. State, Commercial Fisheries Entry Comm'n,* 20 P.3d 547, 550 (Alaska 2001).

exposure rule is a question of law subject to our independent review.[13] We will uphold the board's factual determinations if they are supported by substantial evidence.[14] Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " [15]

In reviewing agency determinations, we use the "reasonable basis" test for questions of law involving agency expertise and our independent judgment for questions of law where no expertise is necessary.[16] The determination of whether Easley is entitled to the offsets is a question of law to which we apply our independent judgment,[17] adopting "the rule of law that is most persuasive in light of precedent, reason, and policy." [18] We review the board's denial of a petition for modification under AS 23.30.130(a) for an abuse of discretion.[19]

## IV. DISCUSSION

### A. The Board's Finding that Easley Is Liable to Lindekugel Is Supported by Substantial Evidence.

In worker's compensation cases, a statutory presumption of compensability arises when the employee has produced some evidence that the employment could have caused or aggravated the employee's injury.[20] Under the last injurious exposure rule, when an employee suffers two separate injuries while working for two separate employers, full liability for the employee's resulting dis-

ability is imposed on the later employer when the second injury is a legal cause of the disability.[21] In order to impose liability on the later employer two determinations must be made: (1) that the second injury aggravated, accelerated, or combined with a preexisting condition and (2) that the aggravation, acceleration, or combination was a legal cause of the disability.[22] When these two determinations are made we presume that the disability is compensable by the second employer.[23]

The board concluded that Lindekugel's testimony and the medical testimony were sufficient to raise the presumption of compensability, a conclusion which Easley does not contest. In order to rebut the presumption, an employer must produce "substantial evidence" that the injury was not work related.[24] An employer rebuts the presumption of compensability if it presents substantial evidence that "(1) provides an alternative explanation, which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability." [25] To rebut the presumption of compensability Easley must present substantial evidence establishing that either (1) the injury was not caused by activities related to work at Easley; or (2) there was no possibility that employment at Easley caused Lindekugel's disability.

**13.** *Steffey v. Municipality of Anchorage*, 1 P.3d 685, 689 (Alaska 2000).

**14.** *Lindekugel v. George Easley Co.*, 986 P.2d 877, 879 (Alaska 1999).

**15.** *Miller v. ITT Arctic Servs.*, 577 P.2d 1044, 1046 (Alaska 1978) (quoting *Fireman's Fund Am. Ins. Cos. v. Gomes*, 544 P.2d 1013, 1015 (Alaska 1976)).

**16.** *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992).

**17.** *Blanas v. Brower Co.*, 938 P.2d 1056, 1059 (Alaska 1997).

**18.** *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

**19.** *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 960–61 (Alaska 1998) (noting that statute

explicitly grants board discretion to review compensation award).

**20.** *Bouse v. Fireman's Fund Ins. Co.*, 932 P.2d 222, 231 (Alaska 1997) (citing *Providence Washington Ins. Co. v. Bonner*, 680 P.2d 96, 98–99 (Alaska 1984)).

**21.** *Ketchikan Gateway Borough v. Saling*, 604 P.2d 590, 595 (Alaska 1979).

**22.** *Id.* at 597–98.

**23.** *See Bouse*, 932 P.2d at 234.

**24.** *DeYonge v. NANA/Marriott*, 1 P.3d 90, 95 (Alaska 2000).

**25.** *Id.* at 96.

■ To rebut the presumption of compensability, Easley relied on Dr. Voke's 1981 opinion that Lindekugel's disability did not change as a result of the 1981 injury, that there was no evidence that Lindekugel suffered a new injury, and that x-rays showed no discernable change in Lindekugel's physical condition before and after the 1981 injury. This, of course, represented Dr. Voke's original opinion that was largely the result of his mistaken belief that a finding of PTD was "immutable." The board rejected Easley's argument and found that "Dr. Voke clearly recognized the employee's injury at Easley as a substantial factor aggravating and accelerating the employee's disability and need for additional treatment," and it noted that nothing in the record provided substantial evidence to support Easley's claim that the employee did not suffer work-related PTD, or to eliminate all reasonable possibilities that Lindekugel's disability was related to his work with Easley.

■ Because the presumption of compensability shifts only the burden of production and not the burden of persuasion, we evaluate the employer's rebuttal evidence independently of causation evidence presented by the employee.[26] We consider whether Easley's evidence, viewed on its own, is such that a reasonable person might rely on the evidence to conclude that Lindekugel's employment at Easley was not a legal cause of Lindekugel's subsequent disability.[27]

Although the presumption of compensability can be rebutted by the testimony of a medical expert stating that the employment was probably not a substantial cause of the employee's disability,[28] no such testimony was provided in this case. In 1999 Dr. Voke stated that the Easley injury was a "substantial factor" in Lindekugel's post–1981 disability. He based his opinion on his examinations of Lindekugel, a review of Lindekugel's medical record, and our holding in *Lindekugel II*. In a 2000 deposition he stated that he would change his 1999 affidavit to reflect his position that the injury at Easley was not a new injury, but rather an aggravation of the injury that Lindekugel received at Fluor. However, under the last injurious exposure rule, an employer can be liable whether its employee's injury is new or an aggravation of an earlier injury. If the injury at Easley aggravated a prior injury, the only remaining question was whether this injury was the legal cause of Lindekugel's disability.[29] Although Dr. Voke's opinion of Lindekugel's disability changed over time, his 1999 affidavit clearly recognized that the Easley injury was a substantial cause of Lindekugel's disability, an opinion that was reinforced by his 2000 deposition in which he amended his position to better reflect his medical opinion that the Easley injury was an aggravation of the Fluor injury.

Easley also argues that it is not liable because Lindekugel failed to prove that he had substantially improved following his classification as permanently totally disabled after his injury at Fluor, either by demonstrating renewed earning capacity or substantial improvement in his physical condition. In *Lindekugel II* we noted that "[d]ramatic improvements in an employee's condition would change his or her [PTD] classification, as would a demonstration of a renewed earning capacity."[30] Easley uses that language to contend that an employee must prove either renewed earning capacity or substantial physical improvement in order to prove that he has substantially improved. But we merely used those changes as examples of how a "permanent" disability classification might change, not as a substantive burden of proof. Although substantial physical improvement and renewed earning capacity may be the most relevant factors in determining whether an employee has overcome

26. *Veco, Inc. v. Wolfer,* 693 P.2d 865, 869–70 (Alaska 1985).

27. *See id.* at 872 (presumption of compensability can be rebutted by evidence sufficient for reasonable person).

28. *Big K Grocery v. Gibson,* 836 P.2d 941, 942 (Alaska 1992).

29. *See United Asphalt Paving v. Smith,* 660 P.2d 445, 447 (Alaska 1983) (applying last injurious exposure rule).

30. *Lindekugel v. Easley,* 986 P.2d 877, 880 n. 18 (Alaska 1999).

his or her PTD status, *Lindekugel II* does not mandate that the *only* way to overcome a PTD presumption is to prove one or the other, as Easley argues. Lindekugel's ability to work at Easley before the accident, his activity in Montana, the determination of the Social Security Administration, and the medical opinions of Drs. Diggs, Nollmeyer, Kurtz, and Davidson all provide substantial evidence to support the board's conclusion that Lindekugel's condition had improved dramatically by 1981.

Considering Dr. Voke's depositions and affidavits in their entirety, we conclude that his testimony was insufficient to rebut the presumption of compensability raised by Lindekugel. A review of the record also leads us to concur with the board's finding that no other substantial evidence rebuts the presumption of compensability.[31] We affirm the board's finding that Easley is liable to Lindekugel under the last injurious exposure rule.

## B. Offsets

Easley also contends that, even if this court upholds the board's finding of liability, it is entitled to a modification of the board's order by receiving offsets to Lindekugel's disability benefits. As noted above, Easley filed three separate petitions with the board under AS 23.30.130(a)[32] seeking offsets to the PTD disability payment from Lindekugel's social security benefits, the Fluor settlement, and the legal malpractice settlement between Lindekugel and Johnson. The board denied Easley's petitions on the grounds that it did not have jurisdiction to rule while the case was on appeal to the superior court and, alternatively, that it would deny the petitions on their merits.

On appeal Easley argues that it is entitled to modification of the award under AS 23.30.130(a) because it asserted a mistake of fact, notably the board's calculation of Lindekugel's compensation rate.[33] We hold that AS 23.30.130(a) does not apply to offsets sought from the benefits that Lindekugel received from Fluor and Gil Johnson, as the resolution of those issues turns upon alleged mistakes of law rather than mistakes of fact. While Easley's claim that it was entitled to an offset for Lindekugel's SSDI award did present a question of fact that the board could review under AS 23.30.130(a), its denial of Easley's claim was not an abuse of discretion.[34]

31. We note also that the evidence before us overwhelmingly supports the board's finding that Lindekugel proved his claim by a preponderance of the evidence.

32. AS 23.30.130(a) states:
Upon its own initiative, or upon the application of any party in interest on the ground of a change in conditions, including, for the purposes of AS 23.30.175, a change in residence, or because of a mistake in its determination of a fact, the board may, before one year after the date of the last payment of compensation benefits under AS 23.30.180, 23.30.185, 23.30.190, 23.30.200, or 23.30.215, whether or not a compensation order has been issued, or before one year after the rejection of a claim, review a compensation case under the procedure prescribed in respect of claims in AS 23.30.110. Under AS 23.30.110 the board may issue a new compensation order which terminates, continues, reinstates, increases, or decreases the compensation, or award compensation.

33. Lindekugel argues that Easley waived its right to seek an offset to the award by failing to raise the issue in its answer. He argues that under 8 Alaska Administrative Code (AAC) 45.050(c) Easley is barred from asserting any defense or related claim if it has not raised the defense in its answer. We have previously rejected the argu-

ment that a party is absolutely bound by the substance of its responsive pleadings. *Schmidt v. Beeson Plumbing & Heating, Inc.*, 869 P.2d 1170, 1176 (Alaska 1994) (waiver implied only when party's conduct shows intent to waive and is inconsistent with any intention but waiver). The burden that Lindekugel asks us to place on employers or insurers is inconsistent with the rule that parties may amend pleadings "at any time before award upon such terms as the board or its designee directs." *Id.* (citing 8 AAC 45.050(e)). We therefore decline to find that Easley waived its right to assert an offset to the award simply by failing to raise the issue in its answer.

34. Easley also argues that its petitions were initially timely because the thirty day period upon which the board retains jurisdiction to reconsider issues "did not go into effect because of the stay [issued by the superior court]." Easley claims that it applied for the stay, and that the stay was granted, within thirty days of the board's decision on September 28, 2000. The record shows that on November 13, 2000, Easley was granted a stay pending the superior court's review. The stay was granted with regard to the lump sum award, but did not apply "to ongoing medical benefits or ongoing PTD." We do not need to address this argument as it was not raised before the board or the superior court and

A party to a worker's compensation case has three methods by which to pursue its position before the board's award is final. The party may raise the issue in a pleading,[35] petition for review of all or part of the case within the time limits set forth in AS 44.62.540,[36] or, in the case of a factual mistake or a change in conditions, it may ask the board to exercise its discretion to modify the award at any time until one year after the last compensation payment is made.[37]

Continuing jurisdiction over matters of worker's compensation is conferred upon the board by AS 23.30.130(a).[38] This statute provides an exception to the common law doctrines that prohibit the relitigation of factual issues, such as waiver and *res judicata.*[39] The board's power under AS 23.30.130(a) is broad, giving it the discretion to review a compensation award because of a change in condition or mistake in the determination of a fact, even if the party cannot produce any new evidence on the factual question at issue.[40]

 The question presented by this case is whether AS 23.30.130(a) may be invoked by a party to request reconsideration on the basis of mistakes of law that have allegedly led to an incorrect rate of compensation.

For the reasons explained below we hold that it may not.

Alaska Statute 23.30.130(a) is substantially similar to its federal counterpart, 33 U.S.C. § 922 of the Longshoremen's and Harbor Workers Compensation Act.[41] The United States Supreme Court held that the federal Department of Labor has broad discretion under § 922 "to correct mistakes of fact, whether demonstrated by wholly new evidence, cumulative evidence, or merely further reflection on the evidence initially submitted."[42] But courts considering § 922 have held almost uniformly that an argument of error in legal analysis does not fall within the scope of reconsideration on grounds of change or mistake of fact.[43] Similarly, in *McShea v. State, Department of Labor,* we affirmed the board's decision not to entertain a party's allegation of factual error when the board's decision was "legal, not factual."[44]

Alaska Statute 23.30.130(a) was never intended to be a vehicle by which a party could raise errors of law or introduce new evidence that the party, exercising due diligence, could have introduced while the case was first before the board. As we have previously held:

> The concept of "mistake" requires careful interpretation. It is clear that an allegation of mistake should not be allowed to

has been given only the most cursory of treatment on appeal to this court. *See Gates v. City of Tenakee Springs,* 822 P.2d 455, 460 (Alaska 1991) (claims that are inadequately briefed are waived). Moreover, the purpose of a stay of a worker's compensation award is to protect an employer from "irreparable damage" caused by the claimant's financial responsibility and the probability that the employer would prevail on appeal, *Wise Mechanical Contractors v. Bignell,* 626 P.2d 1085, 1087 (Alaska 1981), not to allow a party to raise new legal issues while the case is on appeal.

**35.** 8 AAC 45.050(c), (e).

**36.** Alaska Statute 44.62.540(a) enables the board to reconsider all or part of a worker's compensation case on its own motion or on the petition of a party. Such a petition must be filed with the board within fifteen days after mailing or delivery of the decision. The power to order reconsideration expires thirty days after the decision has been delivered or mailed, and if the board takes no action on a petition, it is considered denied. AS 44.62.540(a).

**37.** AS 23.30.130(a).

**38.** *See supra* n. 33.

**39.** *See Sulkosky v. Morrison–Knudsen,* 919 P.2d 158, 163 (Alaska 1996) (if board has power to rehear case and modify compensation awards, doctrine of *res judicata* is inapplicable).

**40.** *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 167 (Alaska 1974); *Fischback & Moore of Alaska, Inc. v. Lynn,* 453 P.2d 478, 485 n. 23 (Alaska 1969).

**41.** *Fischback,* 453 P.2d at 483–84.

**42.** *O'Keeffe v. Aerojet-Gen. Shipyards, Inc.,* 404 U.S. 254, 256, 92 S.Ct. 405, 30 L.Ed.2d 424 (1971).

**43.** *See, e.g., McDonald v. Dir., Office of Workers' Comp. Programs,* 897 F.2d 1510, 1512 (9th Cir. 1990) (noting that relief unavailable if requested solely on basis of change in law); *Gen. Dynamics Corp. v. Dir., Office of Workers' Comp. Programs,* 673 F.2d 23, 25 n. 6 (1st Cir.1982).

**44.** 685 P.2d 1242, 1247 (Alaska 1984).

become a back-door route to retrying a case because one party thinks he can make a better showing on the second attempt.[45] The appropriate recourse for allegations of legal error is a direct appeal or petition to the board for reconsideration of the decision within the time limits set by AS 44.62.540(a). We thus conclude that modification under AS 23.30.130(a) is not appropriate when a party is seeking to adjust the compensation rate based on an allegation that the board committed a mistake of law.

This holding disposes of two of Easley's claims for offsets.

Easley argues that it is entitled to an offset from Lindekugel's malpractice award from Gil Johnson because an attorney from whom a worker receives a malpractice award constitutes a "third party" under AS 23.30.015. Easley also seeks an offset for payments Lindekugel received from Fluor, arguing that, pursuant to our decision in *Wagner v. Stuckagain Heights*,[46] Lindekugel cannot legally recover more than his maximum benefit allowance at any given time. Because both of these claims raise legal questions and do not allege a change in condition or a mistake of fact, they are not grounds upon which modification may be sought under AS 23.30.130(a).

Easley's claim for an offset from Lindekugel's SSDI award pursuant to AS 23.30.225 does allege a mistake of fact. Whether Easley is entitled to an offset for Lindekugel's SSDI payments turns only on the resolution of a disputed fact—whether the SSDI payments were intended to serve as compensation for Lindekugel's condition resulting solely from the accident at Fluor without considering the aggravating effect of the Easley accident—and does not involve the resolution of legal questions.[47] But the board resolved this question in favor of Lindekugel when it found that Easley could not receive an offset from this award because the SSDI payments were compensation for Lindekugel's injury at Fluor, not at Easley.[48] Although questions remain as to the exact reason why Lindekugel's SSDI payments were reinstated, the fact that they were made retroactive to April 1981, months before Lindekugel's injury at Easley,[49] provided the board with a permissible reason to deny the petition, given that no specific facts[50] contradicting the inference that the board drew from the April 1981 retroactive date were introduced.

Because AS 23.30.130(a) vests the board with the discretion to change or maintain the compensation award based on a factual determination,[51] we will reverse the board's

45. *Interior Paint Co. v. Rodgers*, 522 P.2d 164, 169 (Alaska 1974) (quoting 3 Arthur Larson, The Law of Workmen's Compensation § 81.52, at 354.8 (1971)).

46. 926 P.2d 456, 459 (Alaska 1996) (holding that employee was not entitled to simultaneously receive payments for permanent total and permanent partial disability because allowing such recovery would possibly make it "more profitable for him to be disabled than to be well—a situation which compensation law always studiously avoids in order to prevent inducement to malingering").

47. The 1984 letter from the SSA reinstating Lindekugel's benefits appears to have been first submitted to the board with the petition for modification in 2001. If that is the case, then absent an affidavit from Easley or its counsel stating why the letter supporting its allegation of factual mistake could not have been, with the exercise of due diligence, discovered and produced at the time of the hearing before the board, the letter cannot be considered as evidence upon reconsideration. 8 AAC 45.150(d)(2); *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 961 (Alaska 1998).

48. Under AS 23.30.225 an employer is entitled to an offset from a social security payment if the employee receives social security disability benefits that are payable to the employee because of an injury for which a claim was filed under AS 23.30. AS 23.30.225(b). But because the statute does not apply to injuries that took place before the statute's August 31, 1977 effective date, *Caspersen v. Alaska Workers' Comp. Bd.*, 786 P.2d 914, 915 (Alaska 1990), it does not apply to a social security award compensating Lindekugel for his injury at Fluor, which occurred in 1976.

49. The record shows that the SSA reinstated Lindekugel's benefits in February 1984 retroactive to April 1981. Lindekugel's injury at Easley occurred in October 1981.

50. As the board noted, its regulations require "specific facts" to be alleged in petitions brought under AS 23.30.130. *See* 8 AAC 45.150(e).

51. *See* AS 23.30.130(a); 8 AAC 45.150(a); *Interior Paint Co. v. Rodgers*, 522 P.2d 164 (Alaska 1974).

denial of a petition to modify an award under this statute only if the board abused its discretion.[52] For the above reasons, we conclude that the board did not abuse its discretion in this case.

## V. CONCLUSION

Because the board did not err in holding Easley liable under the last injurious exposure rule, because Easley's applications for offsets from the Fluor payment and the legal malpractice award raise claims of legal error that are not subject to modification under AS 23.30.130(a), and because the board did not abuse its discretion in refusing to grant Easley an offset from Lindekugel's SSDI payments, we AFFIRM the decision of the superior court.

FABE, Justice, not participating.

---

**52.** *Hodges,* 957 P.2d at 960–61.